Ricky C. STAFFORD, Appellant,

v.

FORD MOTOR COMPANY, and United Automobile, Aerospace and Agriculture Implement Workers of America (UAW Union), Appellees.

No. 85–5150.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1986.

Decided May 12, 1986.

Jon R. Hawks, Minneapolis, Minn., for appellant.

William F. Garber, Minneapolis, Minn., for United Auto Workers.

George C. Eck, Minneapolis, Minn., for Ford Motor Co.

Before HEANEY and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. Stafford contends that Ford knew or should have known that his address at that time was on

BOWMAN, Circuit Judge.

In this suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against his employer and his union, plaintiff Ricky Stafford appeals from the District Court's order granting defendants' motions for summary judgment on the ground that Stafford failed to exhaust internal union appeals procedures available to him, as required by *Clayton v. International Union, UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). We reverse and remand for further proceedings consistent with this opinion.

### I.

Ricky Stafford was employed by Ford Motor Company at its Twin Cities Assembly Plant in St. Paul, Minnesota from September 1977 until his discharge on June 9, 1983. Stafford was granted a medical leave of absence on April 29, 1983 for treatment of an ulcer. On May 18, 1983, the Ford plant physician examined Stafford to determine whether his medical leave of absence should be extended or terminated. Stafford was also examined by an independent physician on May 25. Both physicians were of the opinion that Stafford was physically capable of returning to work.

On June 1, 1983, Ford sent a letter to Stafford, pursuant to article VIII, sections 5(4) and 30, of the collective bargaining agreement between Ford and the UAW union, advising him that his medical leave of absence had been cancelled and that if he did not report to work within five days he would be terminated. The letter was sent by registered mail to an address on Carillon Plaza in St. Paul, which was Stafford's address as shown by Ford's records. Stafford never received the letter, as he was in fact residing at a different address.[1]

Without knowledge of the above letter, Stafford reported to work on June 13, 1983

---

Herbert Street in St. Paul. Stafford presented evidence that in May 1983 the Ford plant physician contacted him by telephone at the Herbert Street address and also mailed him a letter addressed to the Herbert Street address.

after having been advised by his personal physician that he could return to work. He was informed at that time that he had been discharged effective June 9, 1983 for failing to report within five days of the June 1 letter.

Stafford filed a grievance on June 13, 1983, pursuant to article VII of the collective bargaining agreement, alleging that he had been improperly terminated. The grievance was processed through the third step of the grievance procedure, but then was withdrawn on April 24, 1984 by an international union representative. Stafford was informed on May 7 of the withdrawal of his grievance, which had been scheduled for arbitration on May 9, 1984.

On June 1, 1984, Stafford sent a letter to the UAW International President. In his letter Stafford briefly discussed the circumstances surrounding his discharge and expressed his belief that his termination was "unfair." He referred to the "third step in my grievance claim against the Ford Company" and stated that he would like to have a "new trial." Stafford closed the letter by requesting that the President "please inform me of any action taken up by you." Appendix at 38. On June 19, 1984, the Administrative Assistant to the President informed Stafford by letter that "[d]ue to the collective bargaining nature of the issue," his letter had been referred to the UAW National Ford Department "for an appropriate response." App. at 39. On June 26, 1984, Stafford received a response from the UAW National Ford Department. The letter noted that Stafford had failed to respond to the report-to-work notice sent

by Ford as he was required to do under article VIII, section 5(4), of the collective bargaining agreement. It was further noted that Ford had only the responsibility to send the notice to the "address on record"; that Stafford had failed to notify Ford of his change of address; and that the union had no alternative but to withdraw the grievance since in their opinion it could not be won in arbitration. The letter closed by stating, "I am sorry, but nothing more can be done for you." App. at 44. There was no further communication between Stafford and either the union or Ford.

On August 10, 1984, Stafford filed suit in state court against Ford on various state common law theories, including wrongful discharge and breach of contract. Ford removed the action to federal district court on September 6, 1984. On December 24, 1984, Stafford filed an amended complaint in which he added the UAW as a defendant.[2] Both Ford and the UAW thereafter filed motions for summary judgment on several grounds, only one of which—that Stafford failed to exhaust his internal union remedies—the District Court considered.[3]

In its order the District Court properly noted that the exhaustion requirement operates at two levels in the labor relations and employee grievance context. First, before commencing an action alleging a breach of the labor contract, the employee is required to exhaust any contractual grievance and arbitration procedures provided for in the collective bargaining agreement between the employer and the union. *See Republic Steel Corp. v. Maddox,* 379

---

**2.** The District Court noted in its memorandum order that

> [a]lthough Stafford did not formally plead a claim under § 301 ... it is clear that Stafford's claims involve a breach of the collective bargaining agreement between Ford and UAW and a breach of the duty of fair representation [by] UAW. Stafford now admits that his claims come within the purview of § 301.

*Stafford v. Ford Motor Co.,* No. 3–84–1239, slip op. at 4 n. 1 (D.Minn. Apr. 4, 1985).

**3.** The District Court did not reach the other defenses raised by Ford and the UAW since, in

its opinion, the exhaustion issue was dispositive. Among the other arguments asserted by Ford and the UAW are that: (1) Stafford's claim against the UAW is barred by the six-month statute of limitation; (2) Stafford's state common law claims against Ford are preempted by federal labor law; and (3) Stafford's complaint fails to state a claim upon which relief could be granted. Our reversal of the District Court's order granting summary judgment on the exhaustion issue does not preclude the District Court on remand from considering these other defenses.

U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Exhaustion of contractual remedies is not required, however, when the union has breached its duty of fair representation. *See Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567–68, 96 S.Ct. 1048, 1057–58, 47 L.Ed.2d 231 (1976); *see generally* 2 *The Developing Labor Law* 1294–99 (C. Morris 2d ed. 1983). Second, the employee is also required to exhaust available internal union remedies when they can result in either complete relief to the employee or reactivation of his grievance. *See Clayton v. International Union, UAW,* 451 U.S. 679, 696, 101 S.Ct. 2088, 2099, 68 L.Ed.2d 538 (1981); *see generally* 2 *The Developing Labor Law, supra,* at 1299–1304. In *Clayton,* the Court stated, however, that courts have discretion to excuse exhaustion of internal union remedies. In exercising that discretion, at least three factors should be considered: (1) whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing; (2) whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and (3) whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. *Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095.

The defendants concede that Stafford exhausted his contractual remedies—the grievance and arbitration procedures provided in article VII of the collective bargaining agreement. The defendants contend, however, and the District Court found, that after the union withdrew the grievance, Stafford failed to exhaust the internal union appeals procedures provided in article 33 of the UAW Constitution.

Section 2 of article 33 of the UAW Constitution specifies the avenues of appeal for various types of cases. Section 2(a) sets forth the "normal route of appeal" to be "followed in all cases, except where [the] Constitution makes specific provision for an alternate route of appeal." For pur-

poses of illustration, the Constitution provides examples of the normal route of appeal in several common cases. Among those examples is a challenge to the handling or disposition of a grievance, where the challenge is against the decision of a local union or its officials. The levels of appeal in such a case are, first, to the local union; second, to the International Executive Board (IEB); and third, to the Convention Appeals Committee (CAC) or, where appropriate, to the Public Review Board (PRB). When the challenge is against an International Representative, the appeal begins with the IEB, and then goes to either the CAC or PRB.

Section 2(b) of article 33 lists various appeal processes for certain specific situations. One such situation is "[f]or an interpretation of a collective bargaining agreement by a National Department ... where the interpretation is so obviously correct that no purpose will be served by an appeal...." In such a case, "the appeal shall be directly to the International President." It is also provided that "[t]here shall be no further appeal from that decision."

The District Court in its order stated that "Stafford never formally appealed the withdrawal of his discharge grievance pursuant to Article 33." As for Stafford's letter dated June 1, 1984 to the UAW International President requesting a "new trial," the court stated that even if it creatively construed the letter to be an initiation of an appeal under article 33, "the exhaustion requirement would still confront Stafford." The court held that "[i]n failing to pursue his matter through the appeals procedure provided in Article 33 of the UAW Constitution, Stafford failed to exhaust his internal union procedures." *Stafford v. Ford Motor Co.,* No. 3–84–1239, slip op. at 7 (D.Minn. Apr. 4, 1985).

The District Court then went on to decide whether, in the exercise of its discretion under the three-factor *Clayton* test, it would excuse Stafford's failure to exhaust the internal union appeals procedures. The court found that none of the three factors

was present in the case, and held that it would not excuse Stafford's failure to exhaust his internal union remedies. The court then granted both Ford's and the UAW's motion for summary judgment, stating that there were no genuine issues of material fact with respect to Stafford's failure to exhaust the internal union appeals procedures. *Id.* at 7–9.

## II.

Stafford argues that he did exhaust his internal union appeals procedures under section 2(b) of article 33 of the UAW Constitution. Stafford asserts that the proper appeal procedure for his case was to the UAW International President since his discharge involved "an interpretation of a collective bargaining agreement by a National Department ... where the interpretation is so obviously correct that no purpose will be served by an appeal." He argues that his letter of June 1, 1984 was treated as an appeal under section 2(b), and that its disposition by the National Ford Department (upon referral by the UAW International President) satisfied the exhaustion requirement under *Clayton.*

Apparently the District Court never considered whether Stafford exhausted his internal union remedies under section 2(b). The court's references in its order to subsequent appeal procedures to the IEB, CAC, and PRB, which process is found only in section 2(a), suggest that the court limited its consideration of the exhaustion issue to only section 2(a) appeals. As noted above, under the section 2(b) provision on which Stafford relies on appeal, the proper route of appeal is directly to the UAW International President. There are no further appeals from his decision.

■ In defense of the District Court, however, we are acutely aware of the fact that Stafford's counsel never raised below the section 2(b) exhaustion argument on which he relies on appeal. The district courts cannot be expected to consider matters that the parties have not expressly called to their attention, even when such matters arguably are within the scope of

the issues that the parties have raised. The trial judge should not have to assume the role of an advocate on behalf of a litigant whose counsel has failed to assert a legal theory or argument that might be helpful to the litigant's case.

The general rule in a case such as this one is that a federal appellate court will not consider an issue not passed upon below. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *St. Louis Developmental Disabilities Treatment Center Parents' Association v. Mallory,* 767 F.2d 518, 521 (8th Cir.1985) (appellate court will consider a case "only on the theory upon which it was tried in the district court"). The rationale for the rule is twofold. First, the record on appeal generally would not contain the findings necessary to an evaluation of the validity of an appellant's arguments. *Mallory,* 767 F.2d at 521. Second, there is an inherent injustice in allowing an appellant to raise an issue for the first time on appeal. A litigant should not be surprised on appeal by a final decision there of issues upon which they had no opportunity to introduce evidence. *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). A contrary rule could encourage a party to "sandbag" at the district court level, only then to play his "ace in the hole" before the appellate court.

"The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeal, to be exercised on the facts of individual cases." *Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877. A federal appellate court is justified in resolving an issue not passed on below when, for example, "the proper resolution is beyond any doubt" or "where 'injustice might otherwise result.'" *Id.* (quoting *Hormel,* 312 U.S. at 557, 61 S.Ct. at 721); *see also Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 724 (8th Cir.1976).

■ In this appeal, Stafford argues for the first time that he has in fact exhausted his internal union remedies under

the provisions of section 2(b) of article 33 of the UAW Constitution. As noted above, Stafford relies on the provision that permits a direct and final appeal to the UAW International President "[f]or an interpretation of a collective bargaining agreement by a National Department ... where the interpretation is so obviously correct that no purpose will be served by an appeal." We believe that Stafford's section 2(b) argument raises genuine issues that should be resolved—namely, whether Stafford's situation is the type of situation to which this provision was intended to apply, and whether Stafford's letter of June 1, 1984 to the UAW International President qualifies as an "appeal" under this provision. The record below, however, does not contain any evidence on the section 2(b) issue, and it would be inappropriate for us to attempt to resolve on this record an issue not considered by the District Court. *Mallory,* 767 F.2d at 521. Because we believe, however, that the failure to address Stafford's section 2(b) exhaustion argument "would be inconsistent with substantial justice," *Morrow,* 541 F.2d at 724, we reverse the judgment of the District Court granting summary judgment in favor of defendants and remand this case to the District Court for further proceedings consistent with this opinion. In doing so, we express no opinion concerning the merits of the section 2(b) issue.[4]

---

[4]. The rationale for our disposition of the appeal in this manner is adequately stated by the following quotation:

An appellant may not, as a general rule, overturn a summary judgment by raising in the appellate court an issue of fact that was not plainly disclosed as a genuine issue in the trial court. This general rule must, however, be intelligently applied. And if the appellate court becomes convinced that the appellant, although acting in good faith, has somehow or other failed to raise at the trial court level a genuine factual issue that is, nevertheless, present in the case it should make such a disposition of the appeal as will permit him to do so.

6 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.27[1] (1985).