Ricky C. STAFFORD, Appellant,

v.

FORD MOTOR COMPANY, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Appellee.

No. 87–5029.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 4, 1987.
Decided Dec. 18, 1987.

Jon Hawks, Minneapolis, Minn., for appellant.

Richard W. McHugh, Detroit, Mich., for appellee.

Before HEANEY, Circuit Judge, ROSS, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Circuit Judge.

Ricky C. Stafford appeals the district court's decision granting the United Automobile, Aerospace and Agricultural Implement Workers of America's (UAW) motion for summary judgment. We reverse and remand for trial on the merits.

## I. Background

On April 29, 1983, Stafford was given a medical leave from his job at the Ford Motor Company (Ford) as a result of a diagnosis by his personal doctor indicating a duodenal ulcer. After a subsequent examination by an independent doctor, Ford determined that Stafford was fit to return to work. On June 1, 1983, Ford sent a notice to Stafford informing him that unless he returned to work within five working days, he would be discharged. It is undisputed that Stafford never received the notice because he was no longer living at the address to which the notice was sent.[1] On June 9, 1983, Ford discharged Stafford for failing to report to work. On June 10, 1983, Stafford was informed by his personal doctor that he could safely return to work. On June 13, 1983, Stafford returned to work only to discover that he had been discharged two working days earlier.

Stafford immediately filed a grievance through the UAW. The grievance proceeded through the third step of the procedure mandated by the UAW–Ford collective bargaining agreement. On April 24, 1984, however, the UAW withdrew the grievance. Stafford was informed of this action on May 7, 1984, two days prior to a scheduled arbitration hearing on the matter. On June 1, 1984, Stafford sent a letter to the President of the UAW International. The letter set forth the problems Stafford had

1. The dispute over the notice represents, in essence, the merits of the action. Stafford claims that his discharge was in violation of the UAW–Ford collective bargaining agreement which requires Ford to send such a notice, "by registered mail to the employee's last known address according to the Company's records." Stafford contends that Ford sent the notice to his prior address (7659 Carillon Plaza), despite the fact that it had previously contacted him at his new address (1151 Herbert Street).

The UAW contends that it was justified in withdrawing Stafford's grievance in light of arbitration decisions establishing that Stafford had an obligation to inform the Ford Labor Relations Office of his current address. At the least, the UAW contends that its decision to withdraw the grievance was not arbitrary, discriminatory, or in bad faith so as to give rise to an action for breach of the duty of fair representation. See, e.g., Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

encountered and requested "a new trial."[2] In response, Stafford received a letter from the International President's assistant stating that because his letter involved issues of a "collective bargaining nature" it had been referred to the UAW National Ford Department. On June 26, 1984, Stafford received a letter from the UAW National Ford Department stating that, under the collective bargaining agreement, Ford only had a responsibility to send a notice to Stafford's address of record and that because Stafford had failed to update that address, nothing could be done for him.

On August 10, 1984, Stafford filed suit against Ford in Minnesota state court alleging wrongful discharge and various other common law theories.[3] Ford removed the action to federal district court. On December 24, 1984, Stafford filed an amended complaint adding the UAW as a defendant and alleging breach of the collective bargaining agreement between Ford and the UAW and breach of the duty of fair representation. On April 4, 1985, the district court granted motions by Ford and the UAW for summary judgment on the ground that Stafford had failed to exhaust internal UAW appeals procedures.[4]

Stafford then appealed the district court's decision to this Court. This Court found that section 2(a) of article 33 of the UAW constitution, sets forth the standard route of appeal to be followed in all cases except those for which the UAW constitution provides an alternate route.[5] Section 2(b) of article 33, this Court found, is such an alternate route. It is applicable to an appeal of an interpretation of a collective bargaining agreement by a National Department where the interpretation is "so obviously correct that no purpose will be served by an appeal." Appeals via this route are made directly to the International President whose decision is final. *Stafford v. Ford Motor Company,* 790 F.2d 702, 705 (8th Cir.1986).

Thus, this Court determined that the issue presented by this case is "whether Stafford's situation is the type of situation to which [section 2(b)] was intended to apply, and whether Stafford's letter of June 1, 1984 to the UAW International President qualifies as an 'appeal' under [section 2(b)]." *Id.* at 707. Since the issues arising under section 2(b) were not squarely raised by the parties and considered by the district court and since the record in the district court was incomplete as to the section 2(b) issues, the case was remanded to the district court for further proceedings. *Id.*

On remand, both Ford and UAW renewed their motions for summary judgment.[6] The district court granted the motions finding Stafford's June 1, 1984 letter

---

**2.** The letter stated:

I am writing in regards to my third step in my grievance claim against the Ford Company in St. Paul, MN.

I had several disciplinary actions taken against me which I thought were unfair and should not have been taken.

I was on a one year medical leave from my job because of personal problems. The company sent me a letter requiring me to answer in five days. I did not receive it as I had a change of address. The Company terminated me. I filed a claim and the officers in lodge 879 have taken a year to process my claim and as yet they say they can do nothing in my case.

I would like a new trial. In any case, please inform me of any action taken up by you.

/s/ Rick Stafford
Letter of June 1, 1984.

**3.** Stafford has since settled his claims against Ford.

**4.** In so deciding, the district court expressly refused to consider claims raised by Ford and the UAW that: (1) Stafford's claims were barred by the statute of limitations; (2) Stafford's state law claims were preempted by federal labor law; and (3) Stafford's complaint failed to state a claim upon which relief could be granted.

**5.** This standard route requires the member to appeal first to the local union, then to the International Executive Board, and finally to the Convention Appeals Committee or the Public Review Board.

**6.** On remand, Ford and the UAW also asserted that section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts Stafford's state law claims and that the UAW did not breach its duty of fair representation. In addition, the UAW asserted that Stafford's claims were barred by the applicable statute of limitations.

insufficient to serve as a section 2(b) appeal. First, the court found that Stafford's letter lacked the necessary support and specific information required by section 4(a) of the UAW constitution. Second, the court found that, even if technically sufficient, Stafford's letter was more in the nature of a request to reinstate a grievance.

Alternatively, the court found that even if the letter could be construed as a section 2(b) appeal, Stafford would not have exhausted the UAW appeals process. He could have appealed the UAW's decision not to treat his letter as a section 2(b) appeal. In this regard, the court found that Stafford could have appealed the decision of the UAW International President—to refer the letter to the National Department—to the International Executive Board, to a UAW Public Review Board, or to the International President. In addition, the court found that Stafford could have appealed the National Department's treatment of his letter, as raising an issue involving the interpretation of a collective bargaining agreement, to the International President, but that he failed to do so in a timely fashion.[7] Thus, the court granted summary judgment in favor of UAW and Ford on the ground that Stafford failed to exhaust his internal union remedies. Stafford appeals.

## II. Exhaustion

■ The internal UAW appeals procedures set forth in article 33 of the UAW constitution are hardly a model of clarity. Nonetheless, it appears that there are two avenues of appeal relevant to the case. The first avenue of appeal, which is applicable unless the UAW constitution provides otherwise, is found in section 2(a) of article 33. The section applies to, among other things, a challenge to the handling or disposition of a grievance. The second avenue of appeal is found in section 2(b) of article 33 and applies to a challenge to "an interpretation of a collective bargaining agreement by a National Department or Regional Director, where the interpretation is so obviously correct that no purpose will be served by an appeal." The UAW constitution provides that a section 2(b) appeal shall be directed to the International President and that there shall be no further appeal from his decision.

The question presented to the district court on remand, and before this Court on appeal, is whether Stafford's June 1, 1984 letter to the International President meets the requirements of an appeal pursuant to section 2(b). The district court found the requirements of an appeal were not met. We disagree.

We assume the task of interpreting the UAW constitution for the purpose of determining whether Stafford has exhausted internal union remedies with great reluctance.[8] The exhaustion requirement is grounded on a strong policy encouraging union self governance through development of internal procedures for redress of member grievances. The policy is ill-served by court interference with internal union appeals processes. Nonetheless, in light of the specific circumstances of this case, the district court's decision was based upon an overly technical reading of the UAW constitution and cannot stand. Therefore, we hold that the district court erred in finding, as a matter of law, that Stafford's letter was not an appeal under section 2(b).

7. On April 11, 1985, Stafford wrote to the International President appealing the National Department's decision that nothing more could be done for him. The International President responded:

It is patently obvious, your appeal which is submitted approximately ten (10) months after the last written response to you by the Union, is untimely. Therefore, the issue contained in your appeal is removed from any further consideration.

Letter of April 22, 1985.

8. We emphasize that our decision construes the UAW constitution only insofar as is necessary for the purpose of determining whether Stafford has sufficiently exhausted his internal union remedies to maintain an action in federal court. Therefore, we need not determine whether the appeals processes in sections 2(a) and 2(b) are mutually exclusive or whether the UAW could properly treat the letter as an appeal under one or the other of the sections.

The line between a challenge to the withdrawal of a grievance and a challenge to an interpretation of a collective bargaining agreement leading to withdrawal of a grievance is often difficult to distinguish. This case provides an excellent example. In the first paragraph of his June 1, letter, Stafford stated, "I am writing in regards to my third step in my grievance claim against the Ford Company in St. Paul, MN." In addition, the letter requests a "new trial." This could be interpreted as a challenge to the withdrawal of a grievance.

To the contrary, however, there are other strong factors indicating that the letter was an appeal of an interpretation of the collective bargaining agreement. First, the uncontradicted affidavit of International Representative, Don Burgess, admitted into evidence in this case states:

> In regard to the discharge grievance of Ricky C. Stafford, the plaintiff in this matter, I made the decision to withdraw the grievance because previous Ford Umpire decisions have held that an employee must maintain his current address with the plant labor relations office.

> \*     \*     \*     \*     \*     \*

> Based upon the language of the National Agreement and my prior experience and knowledge of Ford Umpire decisions, I decided that an arbitrator would not excuse Mr. Stafford's failure to furnish an updated address to Ford and that an arbitration could not be won. For this reason, I decided to withdraw the griev-

ance on April 19, 1984, and the decision was confirmed in writing on April 24, 1984.

In addition, in response to Stafford's letter, the International President's administrative assistant wrote to Stafford that "[d]ue to the collective bargaining nature of the issue contained in your letter \* \* \* we have referred your letter to the UAW National Ford Department for an appropriate response." Letter of June 19, 1984. Finally, the UAW National Ford Department responded to Stafford's letter that because the umpire in many arbitration cases had ruled that it is the employee's responsibility to maintain a correct address at the company, the grievance could not be won, and there was nothing more the union could do for him.[9]

In light of the circumstances prompting Stafford to send the letter to the International President, the contents of the letter, the address to which it was sent, and the response he received, Stafford's conclusion that his letter constituted a section 2(b) appeal from which no further appeal could be taken is entirely reasonable and is consistent with the complicated appeals process found in article 33 of the UAW constitution.[10] Therefore, we hold that under the unique circumstances of this case, Stafford has sufficiently exhausted his internal union remedies to maintain an action in federal court.

---

**9.** The letter stated:

> You indicated in your letter that you did not receive the notice because you had a change of address. Ford Motor Company only has responsibility to send this notice to the address on record. Since you failed to notify the Company of your address change, the Union representative had no alternative but to withdraw your grievance, since in his opinion it could not be won in arbitration.

> The umpire in many arbitration cases has ruled that the responsibility is that of the employee to maintain a correct address at the Company.

> I am sorry, but nothing more can be done for you.

Letter of June 26, 1984.

**10.** The district court also found, and the UAW asserts on appeal, that even if Stafford's letter

constitutes a section 2(b) appeal, he did not exhaust his internal union remedies because he could have appealed the International President's treatment of the letter in a manner other than provided for in section 2(b). We disagree. The record reflects that the UAW's actions with respect to Stafford's letter were entirely consistent with a section 2(b) appeal. There is nothing in the UAW constitution that requires the International President to personally decide each section 2(b) appeal. In this case, the International President delegated the decision on Stafford's appeal to the National Ford Department. On the basis of the June 19, 1984 letter from the International President's administrative assistant informing Stafford that his letter had been referred to the National Ford Department, Stafford was justified in believing the National Ford Department spoke for the President and that its decision was final.

### III. Statute of Limitations

■ The district court's decision made it unnecessary for it to consider the UAW's defense that Stafford's claim is barred by the applicable statute of limitations. The UAW, however, asserts the defense as an alternative basis for affirmance. This assertion is properly made insofar as this Court may affirm the decision of the district court upon any ground which is adequately supported in the record. *See, e.g., Brown v. St. Louis Police Department,* 691 F.2d 393 (8th Cir.1982), *cert. denied,* 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983) (appellate court may affirm a judgment on any ground supported by the record).

Despite Stafford's failure to formally plead a claim under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, the district court interpreted the pleadings as clearly raising a "hybrid" section 301 claim. Stafford concurred in the interpretation. *See Stafford v. Ford Motor Company,* No. 3–84–1239, slip op. at 4 n. 1 (D.Minn. April 4, 1985). The Supreme Court has held that the six month statute of limitations found in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to such a claim. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169–71, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983).

Stafford filed the original complaint in this action on August 10, 1984. The complaint, however, named only Ford as a defendant and did not name the UAW. The UAW was subsequently added as a defendant in an amended complaint on December 24, 1984. It is undisputed that Stafford first learned his grievance had been withdrawn on May 7, 1984, that he filed what this Court has found to be an appeal to the International President on June 1, 1984, and that the appeal was finally denied on June 26, 1984.

Assuming, for the purposes of this appeal, that the amended complaint did not relate back to the original filing on August 10, 1984,[11] more than six months passed between the time Stafford learned that his grievance had been withdrawn and the filing of the complaint against the UAW. The question thus presented is whether the statute of limitations begins to run from the date Stafford learned of the withdrawal of his grievance or the date that his appeal to the Union was finally denied.

In resolving the question, two competing policies must be reconciled. First, there is a strong policy in favor of timely and uniform resolution of labor disputes. Second, there is a strong policy in favor of encouraging union self governance through development of internal procedures for redress of member grievances. In furtherance of the first aim, the relatively short six-month statute of limitations found in section 10(b) of the NLRA applies to hybrid section 301 actions. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. at 168–69, 103 S.Ct. at 2292–93. In furtherance of the second, members must exhaust internal union remedies before bringing an action against the union. *Cf. Clayton v. United Automobile, Aerospace and Agricultural Implement Workers of America,* 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981).

Other Circuits have addressed these competing policies and have chosen in favor of requiring exhaustion of internal union remedies. *See, e.g., Hester v. International Union of Operating Engineers,* 818 F.2d

---

11. The UAW argues that the amended complaint does not relate back to the time of the original complaint. They contend that a hybrid action under section 301 actually comprises two causes of action: One against the employer for breach of the collective bargaining agreement and the other against the union for breach of its duty of fair representation. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. at 164, 103 S.Ct. at 2290. Moreover, the employee has the option of suing one defendant and not the other. *Id.* 462 U.S. at 165, 103 S.Ct. at 2291. Therefore, the UAW argues that Stafford made a conscious decision when he filed the original complaint to sue only Ford and may not change his mind after the limitations period has passed. *See* Fed.R.Civ.P. 15(c).

Our disposition of the case makes it unnecessary to pass upon the question whether the amended complaint relates back to the original complaint.

1537, 1546 (11th Cir.1987) (holding that the timeliness of the employee's suit is measured from the later of the date the employee knew or should have known of the employer's final action or the date the union appeals procedure is exhausted or otherwise broken down to the employee's disadvantage); *Dunleavy v. Steelworkers Local 1617,* 814 F.2d 1087 (6th Cir.1987) (holding that the statute of limitations on employee's claim under 29 U.S.C. § 411(a) is tolled by pursuit of internal union remedies despite fact that employee pursued such remedies for more than the four months required by statute); *Proudfoot v. Seafarer's International Union,* 779 F.2d 1558, 1559 (11th Cir.1986), *vacating in part,* 767 F.2d 1538 (11th Cir.1985) (holding that timeliness of section 301 hybrid claim against union is measured from the date the internal union appeals procedure is exhausted or broken down); *Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees,* 782 F.2d 674 (7th Cir.1986) (holding that statute of limitations on section 301 claim runs from point internal union appeals process is exhausted).

Prior to the Supreme Court's decision in *DelCostello,* this court held in a hybrid section 301 case that an employee's cause of action against an employer "did not accrue until his grievance was rejected and the necessary condition precedent to suit had been met." *Butler v. Local Union 823, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 514 F.2d 442, 449–50 (8th Cir.1975). Moreover, in *Butler,* this Court also specifically rejected the position that the employee's cause of action accrues when the employer breaches the collective bargaining agreement but that the statute of limitations is tolled only during the running of the actual grievance process. *Id.* at 449.

Similarly, we reject the UAW's contention that Stafford's cause of action accrued at the time he learned of the withdrawal of his grievance and that the statute of limitations was tolled only during the time Stafford had actually invoked the UAW appeals process. Thus, we hold that the timeliness of Stafford's claim against the union for breach of its duty of fair representation should be measured from the date he exhausted the UAW internal appeals process. Since Stafford learned of the final union action with respect to his appeal on June 26, 1984, and filed his complaint against the UAW on December 24, 1984, his action was timely.

Accordingly, we reverse the decision of the district court and remand for trial on the merits.