# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 20-6002

_____

In re: Racing Services, Inc.

*Debtor*

------------------------------

State of North Dakota, ex rel. Wayne Stenehjem, Attorney General

*Claimant - Appellant*

v.

Susan Bala; Kip M. Kaler, Trustee

*Objectors - Appellees*

_____

Appeal from United States Bankruptcy Court
for the District of North Dakota - Fargo

_____

Submitted:  August 7, 2020
Filed:  September 16, 2020

_____

Before NAIL, SHODEEN and DOW, Bankruptcy Judges.

_____

Dow, Bankruptcy Judge

The subject of this case is a claim filed by the State of North Dakota, ex rel. Wayne Stenehjem, Attorney General (the "State") in its purported representative capacity on behalf of eligible nonprofit organizations and as assignee of Team Makers (the "Claim"). Susan Bala ("Bala"), a creditor and sole equity holder of Racing Services, Inc. (the "Debtor"), objected to the Claim as did the Chapter 7 Trustee (the "Trustee"). The Bankruptcy Court denied the State's claim filed on behalf of unnamed charities for lack of standing, and denied the State's claim on behalf of Team Makers on the equitable doctrine of laches. The State appealed. For the reasons that follow, we affirm in part, and reverse and remand in part.

**STANDARD OF REVIEW**

A bankruptcy court's legal conclusions are subject to *de novo* review. *Fisette v. Keller* (*In re Fisette*), 455 B.R. 177, 180 (8th Cir. BAP 2011). Here we review *de novo* the Bankruptcy Court's legal conclusions on the issue of the State's standing, and the availability of laches as a matter of law. *Dalton v. NPC Intl, Inc.*, 932 F.3d 693, 695 (8th Cir. 2019)(citations omitted).[1]

---

[1] The Debtor posits that appellate courts review a trial court's determination of laches for abuse of discretion, citing *Brown-Mitchell v. K.C. Power & Light Co.*, 267 F.3d 825, 827 (8th Cir. 2001). However, in that case, the court of appeals reviewed the district court's *application* of laches to the facts. In contrast, the question here is the *availability* of laches as a matter of law. *See In re Estate of Rios*, 2008 WL 986043, *2 (N. Mar. I. April 4, 2008)("[w]e review de novo whether laches is available as a matter of law and for an abuse of discretion the [trial] court's decision whether to apply laches to the facts.")(citations omitted)).

2

**FACTUAL BACKGROUND**

This case has a long and complex history that has made its way through several courts. While a detailed recitation of the facts is not necessary for this ruling, an abbreviated version of the factual and procedural history is warranted.[2]

The Debtor operated a pari-mutuel horse racing technology and service business in North Dakota. It filed its Chapter 11 petition on February 3, 2004. The case was converted to Chapter 7 months later. The major controversy is rooted in a ruling by the District Court, ten years into the case, that the State was not authorized to collect taxes under North Dakota law on account of wagering. As a result, the State owed the Debtor's bankruptcy estate millions of dollars for taxes improperly collected. The parties eventually settled; the State paid the estate over $15 million. Other creditors then asserted new claims for a piece of the large cash infusion. The Bankruptcy Court sustained the objections to these claims (other than one of Bala's claims) after a multiple-day trial.

The State filed a new proof of claim over a month after the Bankruptcy Court issued its ruling on the other claims. Its Claim was made "as Representative for the benefit of eligible nonprofit organizations" under the doctrine of *parens patriae*.

---

[2] The following cases provide the background in more detail: *In re Racing Services, Inc.*, 482 B.R. 276 (Bankr. D.N.D. 2012); *In re Racing Services, Inc.*, 595 B.R. 334 (Bankr. D.N.D. 2018).

The only charity listed by name, however, was Team Makers. Acknowledging that the majority of (if not the only) account wagering activity was conducted through Team Makers, the State subsequently entered into a Consent and Assignment Agreement (the "Consent Agreement") with Team Makers for the express purpose of eliminating any question regarding its ability to pursue the Claim against the Debtor's estate for the charity's benefit. Bala and the Trustee objected to the Claim on the grounds that the State lacked standing, the Claim lacked merit, and the Claim was untimely. PW Enterprises, Inc. ("PWE"), a major creditor, filed a brief in support of the State's Claim.

After an evidentiary hearing on the claim objection (the "Evidentiary Hearing"), the Bankruptcy Court denied the State's Claim for lack of standing. It focused on the State's failure to establish 1) that a substantial segment of the population was injured, and 2) that the Claim belonged to anyone other than Team Makers, and if there were indeed any other identifiable charities that were involved, that they were incapable of bringing an action on their own. The Bankruptcy Court also held that while the State may have standing to represent Team Makers by virtue of the Consent Agreement, the Team Makers Claim was barred by laches.

**DISCUSSION**

***Parens Patriae* Authority**

The concept of *parens patriae* creates a right for a state to sue to prevent or repair harm to quasi-sovereign interests. *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 258 (1972). To have *parens patriea* standing, a state must prove two elements: a quasi-sovereign interest distinct from that of a particular party, and injury to a substantial segment of the state's population. *Alfred L. Snapp & Sons, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 607 (1982); *Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868, 872 (8th Cir. 2015). Regarding the first element, a state's mere assertion of quasi-sovereign interests is not sufficient to grant *parens patriae* standing if the relief sought is limited to monetary damages for injuries suffered to individual parties; such an award will not compensate the state for any harm done to its quasi-sovereign interest. *See Snapp*, 458 U.S. at 602; *People of State of N.Y. by Abrams v. Seneci,* 817 F.2d 1015, 1017 (2d Cir. 1987). Regarding the second element, there is no specific number of persons who must be affected for a state to invoke the doctrine, but "more must be alleged than injury to an identifiable group of individual residents." *Snapp*, 458 U.S. at 607.

The State dedicates a substantial amount of its briefing to cases and statutes supporting the position that the State's authority to regulate gaming activities and to

5

oversee charitable organizations for the benefit of the public is broad, and that it has a quasi-sovereign interest in protecting the integrity of the system.[3] While that position may have merit, it does not speak to the question that the State must address, and that the Bankruptcy Court asked directly at the Evidentiary Hearing: How is the State's interest distinct from Team Makers? The State failed to demonstrate a quasi-sovereign interest distinct from the Team Makers Claim, a necessary element to establish *parens patriae* standing. It sought monetary damages for one private charitable organization rather than compensation for any damage done to its quasi-sovereign interest in protecting the public from inappropriate gaming activities. Therefore, we affirm the Bankruptcy Court's holding that the State lacked *parens patriae* authority in this case.

Even if the State had established the first element of *parens patriae* standing, it did not establish the second: injury to a substantial segment of North Dakota's population. When questioned on this point by the Bankruptcy Court at the Evidentiary Hearing, the State responded that the substantial population was North

---

[3] At the Evidentiary Hearing (and in its briefing), the State relied heavily on cases in which the Attorney General intervened because of concerns as to how charitable trusts were operating. The Bankruptcy Court made the distinction, however, that Team Makers is a private charity with its own interests as opposed to a charitable trust. In addition, the majority of the cases and statutes on which the State relies address interests that are not in issue here (*e.g.,* to prevent private corporations from exercising an unauthorized power, to protect any gifts or legacies intended for public purposes, to recover for antitrust offenses).

Dakota State University ("NDSU"), the "sports," the "kids going to college." The Bankruptcy Court pointed out that the State was not representing NDSU, but Team Makers, and it did not see how Team Makers represented a substantial segment of North Dakota's population. This exchange followed:

> State: Well, it may be a factual matter.
>
> …
>
> Court: No, I'm talking about as a matter of factual proof, I'm driving home with this case submitted to me and you're saying that might be a factual matter; saying, well, I didn't see the facts to support it so you haven't shown that as a factual matter. Am I wrong?
>
> State: No.

Evidentiary Hearing Transcript, page 65, lines 6-18.

The State argued further that the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population, citing *Snapp*, 458 U.S. at 607. However, the record is devoid of evidence establishing the "indirect effects" to which the State refers. The State offered only one witness at the Evidentiary Hearing, an attorney representing PWE. (It is noteworthy that the State did not call a representative of Team Makers or of NDSU to testify.) That witness produced no evidence that any charitable organizations other than Team Makers was affected by the account wagering at the relevant time. The State produced no other evidence regarding the specific injury incurred by NDSU, nor did it demonstrate the substance

7

or magnitude of the "indirect effects" of the injury allegedly caused by the Debtor. We therefore concur with the Bankruptcy Court's finding that the State failed to show the requisite injury to a substantial segment of North Dakota's population, and affirm its ruling that the State did not have *parens patriae* standing to file a claim on behalf of Team Makers and other charities.

**Laches**

The Bankruptcy Court ruled that to the extent the State had authority to assert Team Makers' Claim by virtue of the Consent Agreement, it was nonetheless barred by laches, and therefore denied. Laches is an equitable defense based on the maxim that equity aids the vigilant, not those who sleep on their rights. *In re Jemal*, 496 B.R. 697, 703 (Bankr. E.D.N.Y. 2013). It applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted. *Roederer v. J. Garcia Carrion, S.A.*, 569 F. 3d 855, 858-59 (8th Cir. 2009)(citations omitted). To successfully assert laches as a defense, a defendant must prove three elements: 1) a delay in asserting a right or claim; 2) that the delay was inexcusable; and 3) undue prejudice to the party against whom the claim is asserted. *Id.*

At the Evidentiary Hearing, the State did not dispute that there was a delay, nor did it dispute that Bala was prejudiced. It claimed that the delay was excusable

8

because many things had changed through the course of the litigation. In addition, the State asserted that the cause of the prejudice was the Bankruptcy Court's earlier ruling.

The first time the State argued that laches could not apply in Chapter 7 cases was in this appeal. Bala asserts that the State should not be permitted to raise this new issue since it was not raised before the Bankruptcy Court, citing cases holding that this would be inherently unjust. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Stafford v. Ford Motor Co.*, 790 F.2d 702, 706 (8th Cir. 1986).[4] The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeal, to be exercised on the facts of individual cases. *Id.* (citations omitted). An appellate court is justified in resolving an issue not passed on below when, for example, the proper resolution is beyond any doubt or where injustice might otherwise result. *Id.* (citations omitted). Another exception to the general rule cited by Bala is when the argument involves a purely legal issue as to which no additional evidence or argument would affect the outcome. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 891(8th Cir. 2009)(citations omitted).

---

[4] At oral argument, Bala argued that the State had the opportunity to raise its arguments regarding laches in the Bankruptcy Court, but did not. The record does not support that assertion. According to the docket sheet, the State filed its pretrial brief on May 10, the day by which they were due. Bala filed hers on May 24, six days before the hearing – that was the first time she raised the laches defense.

Bala conceded at oral argument that no factual issues are involved in this context. The State's argument that laches cannot apply to Chapter 7 cases is a purely legal question. We conclude that the State did not waive its right to raise this issue, and exercise our discretion to consider it in this appeal.

Section 726 provides in part:

(1)Except as provided in section 510 of this title, property of the estate shall be distributed —
…
(2) in payment of any allowed unsecured claim … proof of which is —
…
>> (C) tardily filed under section 501(a) of this title, if —
>>> (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
>>> (ii) proof of such claim is filed in time to permit payment of such claim;
(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;
…
(6) sixth, to the debtor.

11 U.S.C. §726(a).

The State contends that laches does not apply to tardily-filed claims that are filed in time to permit distribution under §726(a). In other words, since the Trustee has not made his final distribution in the Debtor's case, the State's Claim was filed in time to permit payment; pursuant to §726(a)(3), laches cannot apply. It relies on three cases to support its position: *In re Jemal*, 496 B.R. 697 (Bankr. E.D.N.Y.

10

2013), *In re Feldman*, 261 B.R. 568 (Bankr. E.D.N.Y. 2001), and *Columbia Ribbon & Carbon Mfg. Co.*, 54 B.R. 714 (Bankr. S.D.N.Y. 1985). Bala distinguishes these cases on the grounds that each of them focuses on the fact that the claimant did not have notice or knowledge of the bankruptcy proceeding, so the holdings were governed by §726(a)(2)(C), not §726(a)(3). Since the State has been a known creditor from the inception of the Debtor's bankruptcy, Bala asserts, cases relying on §726(a)(2) are not relevant.

Courts have held that regardless of whether tardily-filed unsecured claims are classified under §726(a)(2) or (a)(3), they are entitled to distribution from the estate, and are to be paid prior to the trustee making any distribution to the debtor. *See, e.g.*, *In re Houser*, 242 B.R. 406, 407 (Bankr. S.D. Ohio 1999); *Perry v. First Citizens Fed. Credit Union*, 304 B.R. 14, 21 (D. Mass. 2004), *aff'd, In re Perry*, 391 F.3d 282 (1st Cir. 2004).

Bala also contends that courts have applied laches to disallow claims in Chapter 7 cases, relying on *In re Wilson*, 96 B.R. 257 (9th Cir. BAP 1988), and *In re Cmehil,* 43 B.R. 404 (Bankr. N.D. Ohio 1984). However, the *Cmehil* court does not even mention §726(a). The court in *Wilson* acknowledges §726(a)(3), but bases its ruling on how the amendment of Rule 3002(c) in 1996 effectively removed the

11

bankruptcy court's discretion whether to extend the time permitted for creditors to file late claims in a Chapter 7. Neither case is relevant.

Further, Bala cites several cases in which courts applied laches to disallow claims in Chapter 11 and Chapter 13 cases. Given that §726 applies only to Chapter 7, these cases are inapposite.

By enacting §726(a)(2)(C), Congress intended to permit distribution to late filed claims of known creditors so long as the claims are filed in time to permit the distribution. *Jemal*, 496 B.R. at 704, citing *In re Feldman,* 261 B.R. 568, 579 (Bankr. E.D.N.Y. 2001). Because the statutory scheme for claims allowance and priority in Chapter 7 cases is expressly set forth in the Bankruptcy Code it would be improper for a court to employ the doctrine of laches to modify that scheme. *See Jemal*, 496 B.R. at 704. As the Supreme Court stated in *United States v. Mack*, "Laches is not a defense to an action filed within the applicable statute of limitations." *Mack*, 295 U.S. 480, 489 (1935). One of the principal reasons for this rule is that "separation of powers principles dictate that federal courts not apply laches to bar a federal statutory claim that is timely filed under an express federal statute of limitations." *Jemal*, 496 B.R. at 703 (citing *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997). The application of laches is inconsistent with the language of §726 and its underlying policy.

12

The State also argues that the Bankruptcy Court erred in disallowing its tardily-filed claim, citing §502(b).[5] Under that provision of the Bankruptcy Code, a claim shall be allowed unless it falls within one of its nine exceptions. *In re Dove-Nation*, 318 B.R. 147, 153 (8th Cir. BAP 2004). Pursuant to §502(b)(9), a tardily-filed claim in a Chapter 7 case is not subject to disallowance so long as it meets the requirements of either §§726(a)(1), (2), or (3). 11 U.S.C. §502(b)(9). The court in *In re Stalf*, 252 B.R. 168 (Bankr. E.D. Mo. 2000), articulated the exception to the exception this way:

> In a Chapter 7 case, a proof of claim is deemed allowed unless a party in interest objects. If an objection is made, the Court shall allow the claim except to the extent that the proof of claim was not timely filed; except that if not timely filed, it may yet be allowed to the extent that it was tardily filed as permitted under §726(a)….

*Id.* at 169 (citations omitted). The State takes the position that its Claim, though tardily-filed, should not have been disallowed because, under §502(b)(9), it was filed within the limitations set forth in §726(a)(3) (*i.e.*, before a final distribution).

In response, Bala argues that while a tardily-filed claim may not be disallowed based on its tardiness under §502(b)(9), a court could disallow it under §502(b)(1) which provides for disallowance if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other

---

[5] Bala did not challenge our consideration of this issue on the grounds that it was not raised in the Bankruptcy Court.

than because such claim is contingent or unmatured." 11 U.S.C. §502(b)(1). Bala attempts to "fit" its objection to the State's claim into §502(b)(1) by characterizing laches as a defense under North Dakota law. We do not find this argument persuasive.

A plain reading of §502(b) suggests that the bankruptcy court should determine whether a creditor's claim is enforceable against the debtor as of the date the bankruptcy petition was filed. *In re Flanagan*, 503 F. 3d 171, 179 (2d Cir. 2007). The fact that laches is a recognized defense in North Dakota, as Bala contends, does not render the Claim unenforceable against the Debtor under "applicable law" as contemplated by §502(b)(1). By definition, the laches defense was not available as of the date the Debtor's petition was filed.

Because we have decided that laches is not available as a matter of law to tardily-filed claims in a Chapter 7 case as long as they are filed in time to permit distribution under §726(a), there is no need to address the State's separate argument that §502(b) does not provide for the disallowance of claims based on issues of post-petition enforceability.

For the foregoing reasons, we affirm the Bankruptcy Court's ruling that the State's Claim as filed on behalf of Team Makers and unnamed charities is denied for lack of standing under *parens patriae.* While we agree with the Bankruptcy

14

Court that finality is a very important interest, particularly in a case of this duration, we conclude that laches does not apply to tardily-filed claims that are filed in time to permit distribution under §726(a). We therefore reverse the Bankruptcy Court's ruling that the Team Maker Claim assigned to the State was barred by laches, and remand the case to the Bankruptcy Court for reconsideration of the Claim and any other objections thereto.

_____

15