**In re INTERSTATE CIGAR COMPANY, Debtor.**

**Bankruptcy No. 890–81248–478.**

United States Bankruptcy Court, E.D. New York.

Feb. 8, 1993.

---

Pension Ben. Guar. Corp. by Joseph De-Franco, Office of the General Counsel, Washington, DC.

Teitelbaum, Braverman & Borges by J. Ted Donovan, New Hyde Park, NY, for creditor.

Angel & Frankel, P.C., New York City, for debtor.

## DECISION ON CLAIM FILED AFTER BAR DATE BY CREDITOR WITHOUT NOTICE

DOROTHY EISENBERG, Bankruptcy Judge.

This is a Chapter 11 case in which the Official Committee of Unsecured Creditors (the "Committee") has been authorized by the Court to prosecute actions in lieu of the Debtor, and on behalf of all creditors. The Committee has brought on the instant objection to two proofs of claim [1] filed on or about August 10, 1992 by the Pension Benefit Guaranty Corporation (the "PBGC") on the grounds that: (1) the claims are not entitled to administrative priority; and (2) the claims were filed after the applicable bar dates. The PBGC concedes that the claims are in fact general unsecured claims, but asserts that the PBGC never received the requisite actual notice of the bar dates. Therefore, the PBGC urges that the claims be allowed as timely filed claims and that they be treated as such in the distribution to be made to creditors.

Based on the pleadings, memoranda and oral argument presented to this Court, the Court agrees with the PBGC that the claims are to be allowable and are deemed timely filed because the PBGC, as a known creditor, did not receive actual notice of the bar date as required under the basic principles of due process.

## STATUTORY BACKGROUND

Prior to the filing of the Petition, on March 28, 1968, Interstate Cigar Co., Inc. (the "Debtor") adopted the ICC Employees Group Pension Plan (the "Plan"), which was amended in its entirety and restated effective March 28, 1984. The PBGC is a wholly-owned United States government corporation established under 29 U.S.C. Section 1302(a) to administer and enforce the pension plan termination insurance program contained in Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), which is applicable to the Plan. Pursuant to the Restated Plan, the Debtor had the duty to name the Plan Trustees and the Plan Administrator. Sidney Spielfogel, a director, a shareholder and the Vice President of the Debtor, signed the document as Plan Trustee. The late Michael Spielfogel, a twenty-four (24%) per-

1. One claim is for unfunded pension benefits and one claim is for statutory plan premiums.

cent shareholder and a director of the Debtor, signed the documents as the "employer". Sherman Saiger, Acting President of the Debtor who was also the Secretary and a director of the Debtor, was named the Plan Administrator.

Pursuant to ERISA regulations, the contributing sponsor (*i.e.*, the Debtor) is charged with the responsibility of notifying the Plan Administrator of a "Reportable Event," such as when a contributing sponsor of a Plan commences a bankruptcy case, or has a bankruptcy case commenced against it. ERISA § 4043, 29 U.S.C. § 1343; 29 C.F.R. §§ 2615.21, 22. The Plan Administrator has the obligation to notify the PBGC of the Reportable Event.

Subject to statutory limitations, the PBGC guarantees the payment of certain pension benefits to participants and beneficiaries in pension plans covered by Title IV, if the plans terminate without sufficient assets to provide for those benefits. *See* ERISA §§ 4021, 4022, 29 U.S.C. §§ 1321, 1322. When a covered pension plan terminates without sufficient funds to pay guaranteed benefits, the PBGC takes over the assets of the plan, makes up the deficiency in plan assets out of its own funds, and pays ERISA guaranteed benefits to plan participants.

When an underfunded plan terminates, the contributing sponsor and each member of its controlled group incur, jointly and severally, two separate and distinct liabilities under ERISA § 4062, 29 U.S.C. § 1362. The first of these liabilities is due to the PBGC for "the total amount of the plan's unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan...." ERISA § 4062(b), 29 U.S.C. § 1362(b). Under section 4001(a)(18) of ERISA, the "amount of unfunded benefit liabilities" means the difference between plan assets and the "value of the benefit liabilities under the plan determined ... on the basis of assumptions prescribed by [PBGC] for purposes of section 4044...." 29 U.S.C. § 1301(a)(18). The PBGC prescribed such assumptions in a regulation governing the valuation of plan liabilities at plan termination. 29 C.F.R. pt. 2619.

Termination also means that the contributing sponsor and each member of its controlled group are jointly and severally liable to the trustee appointed under ERISA § 4042, 29 U.S.C. § 1342 for unpaid contributions representing the outstanding balance of a plan's accumulated funding. ERISA § 4062(c), 29 U.S.C. § 1362(c). *See,* ERISA §§ 302–305, 29 U.S.C. §§ 1082–85; Internal Revenue Code ("IRC") § 412, 26 U.S.C. § 412. The PBGC is almost invariably appointed to be the "Section 4042" trustee of the terminated underfunded plan.

The contributing sponsor and members of the contributing sponsor's controlled group are "designated payors" under ERISA § 4007(e)(1), 29 U.S.C. § 1307(e)(1), and as such are also liable for premiums, interest, and penalties imposed by ERISA for pension plans covered by Title IV of ERISA. *See* ERISA §§ 4007(a), (b) and (e), 29 U.S.C. §§ 1307(a), (b), and (e); 29 C.F.R. § 2610.26(a).

## FACTS

On May 10, 1990, an involuntary Chapter 7 petition was filed against the Debtor, and the case was subsequently converted to Chapter 11. At the time the involuntary petition was filed, the Debtor had an ERISA-imposed obligation to notify the Plan Administrator of the bankruptcy, and the Plan Administrator had an ERISA-imposed duty, within 30 days of the petition date, to provide the PBGC with a Notice of Reportable Event. At that time, however, the PBGC did not receive any notice of the filing of the petition from either the Debtor or the Plan Administrator.

The Debtor listed the ICC Employees Group Pension Plan on its schedule of creditors, but did not list the PBGC. By order dated December 11, 1990, this Court established February 19, 1991 as the bar date for general claims. Pursuant to the order, the Debtor was to notify "... all known creditors" of the bar date. Although the Plan Administrator Committee received notice of the bar date, the PBGC was not so

notified. At that time, the Debtor was aware that the PBGC could have a claim against the Debtor for unfunded liabilities unless Sidney Spielfogel waived all or part of his Plan benefits.

By order dated August 19, 1991, this Court established September 30, 1991 as the bar date for administrative claims. Although the Committee did notify the Plan Administrator of the bar date, the Committee did not so notify the PBGC.

In addition to receiving no notice of the bar dates, the PBGC was advised by the Debtor and by Geller & Wind[2], which purported to be the Debtor's counsel, on two separate occasions that Plan assets were sufficient to pay all benefits. First, in September 1990, the Debtor provided participants of the Plan with a notice that it intended to terminate the Plan. The notice contained a representation that "the plan administrator believes that the plan assets are adequate to provide benefit commitments under the plan." On or about March 15, 1991, the Debtor filed with the PBGC a standard termination application for the Plan because the employer was being liquidated in a "reorganization as part of bankruptcy or similar proceeding." The application contained representations to the PBGC that the assets of the Plan were sufficient to pay benefit liabilities. The cover letter accompanying the application, which was prepared by Geller & Wind, stated that the Plan had sufficient assets to satisfy benefit liabilities. In addition, the application contained a sworn certification from Sherman Saiger, the Plan Administrator, that the Plan's assets equaled or exceeded the value of the Plan's benefit liabilities as of the proposed distribution date. What the Debtor failed to disclose to the PBGC was that the Plan would only contain sufficient assets if Sidney Spielfogel waived his benefits under the Plan.

Second, by letter dated October 4, 1991, the Debtor again represented, through Geller & Wind, its "Plan legal counsel", that the Plan had sufficient assets to satisfy benefit liabilities.

The PBGC first discovered that the Plan was not sufficient by letter dated June 15, 1992, from Noel & Hauser, Sidney Spielfogel's counsel. In addition, the PBGC received a letter dated July 22, 1992 from Geller & Wind, this time purporting to be the "Plan actuary" which disclosed that Sidney Spielfogel no longer wished to waive his benefits. PBGC filed its proofs of claim on August 10, 1992, within seven weeks after receiving notice from Noel & Hauser that the Plan was underfunded.

According to the Committee, notification to the Plan Administrator of the bar dates is sufficient under the relevant ERISA regulations, and any failure of the PBGC to receive such notice from the Plan Administrator is solely the fault of the PBGC's reporting system. In the alternative, the Committee argues that PBGC's claims are barred by laches because they were filed approximately seventeen months after discovering the bankruptcy in March, 1991. Therefore, the Committee urges that the PBGC has not established excusable neglect because it was charged with the duty as of March 15, 1991 to investigate any claims it may have in connection with the Debtor's bankruptcy case.

According to the PBGC, its failure to receive notice of the bar dates constitutes cause for enlargement of time to file the proofs of claim. Although ERISA regulations identify the Plan Administrator as the party to receive notice of Reportable Events, bar orders are not considered a Reportable Event. Accordingly, the PBGC argues that it is the proper party to receive notice of the bar dates under the Bankruptcy Rules. In addition, the PBGC claims that its failure to file the proof of claim until seventeen (17) months after first learning of the bankruptcy constitutes excusable neglect under the facts of this case. The PBGC states that from the time it was first apprised of the bankruptcy by the Debtor, the Debtor and the Debtor's

---

**2.** Geller & Wind were never authorized by this Court to represent the Debtor during this Chapter 11 proceeding. It is not clear whether principals retained Geller & Wind to represent them individually, or who authorized the firm to act in any capacity on behalf of the Debtor.

counsel reassured the PBGC that it had no claim against the Debtor's estate. As a result, the PBGC was misled by the Debtor with respect to any claims it may have, thus excusing the PBGC from further inquiry into whether it had any claims against the Debtor once it received notice of the bankruptcy.

## DISCUSSION

■ Federal Rules of Bankruptcy Procedure Rule 2002(j) provides, in pertinent part, as follows:

> Copies of notices required to be mailed to all creditors under this rule shall be mailed ... (4) if the papers in the case disclose a debt to the United States other than for taxes, to the United States attorney for the district in which the case is pending and to the department, agency, or instrumentality of the United States through which the debtor became indebted....

Bankruptcy Rule 2002(j) clearly requires that notices of bar dates to governmental departments, agencies or instrumentalities like the PBGC be sent to the entity in question and the U.S. attorney located in the relevant district. *In re Divco Philadelphia Sales Corp.,* 60 B.R. 323, 325 (Bankr. E.D.Pa.1986). Contrary to the Committee's assertion, service on the Plan Administrator under ERISA regulations is insufficient for purposes of notifying the PBGC of the bar date because the Bankruptcy Rules unequivocally require service upon the agency itself as well as the U.S. attorney in the appropriate district. Whether a bar order is a reportable event or not is immaterial. Federal Rules of Bankruptcy Procedure Rule 2002(j) required service on the PBGC. Therefore, it is clear that the PBGC did *not* receive proper notice of the bar dates as required by the Bankruptcy Code and Rules.

■ The Committee further argues that receipt of notice of the bankruptcy on March 15, 1991 via the standard termination application was sufficient to put the PBGC on notice to inquire about the bar dates. However, if a creditor is "known" then the debtor is obligated to give the creditor actual notice of the bar date. *In re Thomson McKinnon Securities Inc.,* 130 B.R. 717, 720 (Bankr.S.D.N.Y.1991); *In re Charter Co.,* 125 B.R. 650, 654 (M.D.Fla. 1991). In *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), the Supreme Court concluded that actual notice and an opportunity to be heard were necessary before a party could be deprived of property. 344 U.S. at 297. Although the government does not have a constitutional right to due process, courts have construed the notice requirements under Federal Rules of Bankruptcy Procedure Rule 2002(a)(8) to require notice to "all creditors" vesting the government with a right akin to due process in these cases. *See U.S. v. Cardinal Mine Supply,* 916 F.2d 1087, 1091 (6th Cir.1990).

■ Even if a creditor is aware of the bankruptcy, due process places the burden on the debtor to give the known creditor actual notice of any bar dates. *In re Nutri*Bevco, Inc.,* 117 B.R. 771, 778 (Bankr. S.D.N.Y.1990), (citing *City of New York v. New York, New Haven & Hartford Railroad Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *In re Spring Valley Farms, Inc.,* 863 F.2d 832 (11th Cir.1989); *Reliable Electric Co. v. Olson Constr. Co.,* 726 F.2d 620 (10th Cir.1984); *In re Intaco Puerto Rico, Inc.,* 494 F.2d 94 (1st Cir. 1974); *In re Harbor Tank Storage Co.,* 385 F.2d 111 (3d Cir.1967); *In re Middle Plantation of Williamsburg, Inc.,* 48 B.R. 789 (E.D.Va.1985); *In re Standard Metals Corp.,* 48 B.R. 778 (D.Colo.1985), *aff'd on other grounds,* 817 F.2d 625 (10th Cir. 1987), *cert. denied,* 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988); *In re Moskowitz,* 35 B.R. 750 (Bankr.S.D.N.Y.1983); *In re Heater Corp. of America, Inc.,* 97 B.R. 657 (Bankr.S.D.Fla.1989). The focus of due process is on "the duty of the debtor to give notice of the relevant dates, not on the relative ease with which a creditor can obtain the information without such notice." *In re Rogowski,* 115 B.R. 409, 414 (Bankr. D.Conn.1990). However, if a creditor is not known, mere publication notice of the bar date is sufficient. *In re Charter Co.,* 125 B.R. 650, 655 (Bankr.M.D.Fla.1991).

■ In order to determine whether the PBGC is a "known" or "unknown" creditor, the Court must analyze whether the PBGC's claim was reasonably ascertainable to the Debtor or whether the PBGC's claim was "merely conceivable conjectural or speculative." *In re Charter Co.*, 125 B.R. at 655. In this instance, it is inconceivable that the PBGC's potential liability should not have been known. At the time the petition was filed, the Debtor, through the Plan Administrator, knew that the Plan was underfunded thereby giving rise to the PBGC's claim. The only reason the Plan could be deemed fully funded was because Sidney Spielfogel, an officer, director and shareholder of the Debtor, agreed to waive his benefits under the Plan. The Debtor listed the Plan on its schedules and the Plan was served with all notices, including the bar dates. In addition, the Creditors' Committee acknowledged in its oral argument that it deemed giving notice to the Plan sufficient to cover its obligations to the PBGC.

Clearly, the Debtor recognized that a liability to the PBGC existed unless the Debtor could manage to reduce the claims against the Plan. In this instance, the PBGC, through no fault of its own, did not receive actual notice of the bar date as a result of the Debtor's failure to list it on the Schedules. As a potential known creditor, the PBGC has a right to assume that it will receive the notices to which it is entitled and such failure by the Debtor to so notify the PBGC violates the PBGC's rights.

■ Even assuming arguendo that the PBGC is deemed an "unknown creditor", the PBGC's failure to file timely claims is in fact the result of excusable neglect. Bankruptcy Rule 3003(c)(3) requires the Court to fix the time within which proofs of claim must be filed. If a party seeks to have the time extended after the time for filing claims has passed, then Rule 9006(b), which is read in conjunction with Rule 3003(c)(3), mandates that the party requesting the relief demonstrate that its "failure to act" timely was a result of "excusable neglect."

■ Under the strict construction of the doctrine of excusable neglect, there must be a clear showing that the neglect was justifiable under the circumstances. *In re Golden Distributors, Ltd.*, 128 B.R. 349, 351 (Bankr.S.D.N.Y.1991), (citations omitted). Case law has provided a framework for determining whether the conduct in question constitutes excusable neglect, which instances involve factors out of the claimant's control (*i.e.*, mishandling of papers by the Clerk's office, failure to receive a timely claim due to slowness of the mails). *In re Elliano*, 9 B.R. 287, 289 (Bankr.E.D.N.Y.1981) (citations omitted). In addition, excusable neglect has been found where the claimant's failure to file a timely proof of claim is attributable to the debtor's conduct. *Id.*

For example, in *In re Norris Grain Co.*, 81 B.R. 103, 109 (Bankr.M.D.Fla.1987), *aff'd, In re Norris Grain Co.*, 131 B.R. 747 (M.D.Fla.1990), the Bankruptcy Court found excusable neglect by the IRS where the IRS failed to file a proof of claim in the case because the debtor estimated its tax owed for a particular year at "zero." Likewise, in this instance, the PBGC was advised from one of the Debtor's principals and by the Debtor's purported counsel from the time it received notice of the bankruptcy and thereafter that the Debtor had no unfunded liabilities. Such misleading statements and subsequent reliance by the PBGC do not point to negligence on the part of the PBGC.

In this case, the fault may lie with the Debtor or its principals for providing information to the PBGC which was incomplete and misleading at best and patently false at worst. As a result, a cause of action may lie against these parties, but the PBGC as an innocent party should not be held accountable.

The PBGC did not receive adequate notice of the bar dates as required by Bankruptcy Rule 2002 and the due process clause of the Constitution because it never received actual notice of the bar dates. As a "known creditor," the PBGC was entitled to receive such notice from the Debtor and/or the Committee. Even assuming the

PBGC was not a "known creditor," the PBGC has sufficiently established excusable neglect because the Debtor actively misled the PBGC about the possible claims the PBGC had against the Debtor and the PBGC acted as soon as it was apprised that it might have claims.

CONCLUSION

1. This Court has jurisdiction of the subject matter of this proceeding under 28 U.S.C. § 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (B).

2. The claims filed by the PBGC on August 10, 1992 are allowed as timely filed unsecured claims, without prejudice to an objection being raised as to the merits of the claim for reasons other than late filing.

Settle an order on notice in accordance with this opinion.