**In re P & L CREDIT AND COLLECTION SERVICES, INC., Debtor.**

**Mark J. Schlant, Chapter 7 Trustee for P & L Credit and Collection Services, Inc., Appellant,**

v.

**Federal Deposit Insurance Corporation, Appellee.**

**No. 99–CV–905A.**

United States District Court,
W.D. New York.

May 11, 2000.

---

Mark J. Schlant, Zdarsky, Sawicki & Agostinelli, Buffalo, NY, for P & L Credit and Collection Services, Inc., Debtor.

Michael E. Ferdman, Hiscock & Barclay, Buffalo, NY, for Federal Deposit Insurance Corporation, As Receiver of Goldome, Appellee.

Mark S. Wallach, Buffalo, NY, for Gary Lichtman and Marsha Lichtman, Appellees.

## DECISION AND ORDER

ARCARA, District Judge.

### *INTRODUCTION*

Mark J. Schlant, Chapter 7 Trustee for debtor P & L Credit and Collection Services, Inc., appeals from a decision of the Bankruptcy Court, holding that the claim of creditor Federal Deposit Insurance Corporation ("FDIC") against the debtor's assets was timely filed, even though the FDIC had prior knowledge of the pending bankruptcy proceeding, yet failed to file its claim before the claims bar date established by the Clerk of the Bankruptcy Court. For the reasons stated, the decision of the Bankruptcy Court is reversed.

### *STATEMENT OF FACTS*

The facts in this case are undisputed. On July 11, 1996, the debtor, P & L Credit and Collection Services, Inc., filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York. Although the debtor's statement of financial affairs indicated that the FDIC had commenced a pre-petition legal action against the debtor, the various schedules and mailing matrix filed by the debtor failed to list the FDIC as a creditor.

On July 24, 1996, the Bankruptcy Clerk mailed a notice of the first meeting of creditors to all the parties listed on the debtor's mailing matrix. Pursuant to Bankruptcy Rule 2002(e), this notice advised, "[t]here appears to be no assets available from which payment may be made to unsecured creditors," and that, accordingly, creditors were not to file proofs of claim "unless you receive a court notice to do so." [1] The FDIC independently learned about the debtor's bankruptcy filing and appeared at the debtor's first meeting of creditors on August 19, 1996. The FDIC, however, never requested to be added to the debtor's mailing matrix.

At some point during his administration of the bankruptcy, the Chapter 7 Trustee determined that sufficient assets would likely be available to effect a distribution to unsecured creditors. Accordingly, on February 6, 1997, pursuant to Bankruptcy Rule 3002(c)(5), the Bankruptcy Clerk mailed a notice establishing May 12, 1997 as the last day to file claims against the debtor's estate.[2] This notice was mailed to all creditors who appeared on the debtor's mailing matrix and any other creditors who requested in writing to be added to the mailing matrix. Because the FDIC neither appeared on the original mailing matrix nor requested to be added thereto, the Bankruptcy Clerk did not mail a copy of the notice to the FDIC. The FDIC did not file its proof of claim until May 30, 1997, approximately 18 days after the claims bar date established by the Bankruptcy Clerk.

On June 15, 1999, the Chapter 7 Trustee filed an objection to the FDIC's claim, alleging that it was "tardily filed." In opposition to the objection, the FDIC argued that: (1) because it did not receive notice of the May 12, 1997 claims bar date, its claim was not tardy; (2) it filed a timely "informal claim" prior to the claims bar date; and (3) even if its claim was tardy, the tardiness should be excused.

In a Decision and Order dated September 13, 1999, the Bankruptcy Court concluded that the FDIC's claim was not "tardily filed" and that the FDIC should share in the distribution of the debtor's assets under 11 U.S.C. § 726(a)(2). The Bankruptcy Court reasoned that because the Bankruptcy Clerk had initially sent the Rule 2002(e) notice of insufficient assets, creditors were not obliged to file claims until after the Clerk had sent a Rule 3002(c)(5) notice that a dividend appeared possible. According to the Bankruptcy Court, as the FDIC never received such a notice, there was never any applicable deadline by which the FDIC was obliged to file its proof of claim. Consequently, the Bankruptcy Court concluded that, because there was no deadline, the FDIC's claim was not tardy. Because the Bankruptcy Court determined that the FDIC's claim was timely filed, it did not consider the FDIC's alternative arguments that it had made a timely "informal claim" or that any tardiness should be excused.

The Chapter 7 Trustee filed a notice of appeal to this Court and a motion to reconsider in the Bankruptcy Court. The Bankruptcy Court subsequently denied the motion for reconsideration.

---

1. Rule 2002(e) provides:

In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

2. Rule 3002(c)(5) provides in pertinent part:

In a chapter 7 liquidation, ... a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors .. except ... [i]f notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

## DISCUSSION

■ Section 726 of the Bankruptcy Code establishes the scheme for distribution of property of a Chapter 7 estate. 11 U.S.C. § 726. Pursuant to § 726(a)(1), assets of a debtor are to be initially distributed to those creditors that possess priority claims against the debtor. After payment of priority claims, the trustee is to distribute assets to a class that consists primarily of allowed unsecured claims that have been "timely filed," *see* 11 U.S.C. § 726(a)(2)(A) and (B), and certain "tardily filed" claims. *See* 11 U.S.C. § 726(a)(2)(C). Section 726(a) provides in pertinent part:

Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section;

(2) second, in payment of any allowed unsecure claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim

. . .

Section 726(a)(2)(C) provides that a tardily filed claim, *i.e.*, a claim filed after the claims bar date established by the Bankruptcy Court or the Bankruptcy Rules, may only be allowed as a second-level claim under § 726(a)(2) if the unsecured creditor asserting such a claim did not have notice or actual knowledge of the bankruptcy case prior to the claims bar date and files such a claim before the assets are distributed. In this case, there is no dispute that the FDIC had knowledge of the bankruptcy case long before the claims bar date was established. It is further undisputed that the FDIC's claim was filed after the claims bar date. Thus, under the plain language of § 726(a)(2)(C), the FDIC's claim should not have been allowed as a second-level claim under § 726(a)(2).

■ The Bankruptcy Court held, in essence, that the FDIC was not bound by the claims bar date because it did not receive a Rule 3002(c)(5) notice from the Bankruptcy Clerk. However, this reasoning ignores the fact the Bankruptcy Clerk was not required to send the FDIC a Rule 3002(c)(5) notice because the FDIC never bothered to get itself added to the debtor's mailing matrix. Rule 3002(c)(5) refers back to the notice originally given to creditors under Rule 2002(e). The notice required under Rule 2002(e) is controlled by Rule 2002(g), which provides that the notices are to be mailed to those creditors who provide the Court with an address in a filed request or who are already listed as creditors by the debtor. Thus, where, as here, a creditor is not listed by the debtor and does not notify the Bankruptcy Clerk of its address, the Bankruptcy Clerk is not required to send that creditor a notice under either Rule 2002(e) or Rule 3002(c)(5). This only makes sense. The Bankruptcy Clerk can only be expected to send notices to creditors who are listed by the debtor or who have provided the Clerk with an address.

■ The tardily-filed claim of such an unlisted creditor is allowed as a second-level claim under § 726(a)(2) only if the creditor did not have notice or actual knowledge of the bankruptcy proceeding in time to file a timely claim. If the

**36**

creditor did, in fact, have knowledge of the bankruptcy proceeding, then its tardily-filed claim cannot be allowed as a second-level claim under § 726(a)(2). In other words, when a creditor knows of a pending bankruptcy proceeding and knows that the debtor failed to list the creditor on the mailing matrix, the burden is on the creditor to have itself added to the mailing matrix on file with the Bankruptcy Clerk. If the creditor fails to do so, then it cannot be heard later to complain that it did not receive notice of the claims bar date under Rule 3002(c)(5).

This case appears to be on all fours with the case of *In re Coastal Alaska Lines, Inc.,* 920 F.2d 1428 (9th Cir.1990).[3] The creditor in that case, like the FDIC in this case, was not listed as a creditor by the debtor in its Chapter 7 bankruptcy petition. The creditor subsequently became aware of the bankruptcy proceeding and received a copy of a Rule 2002(e) notice that was sent out to the creditors as part of the notice for the first creditors' meeting. Despite being on notice of the existence of the bankruptcy proceeding, the creditor never had itself added to the list of creditors. Accordingly, when a subsequent notice of a claims bar date was sent out under Rule 3002(c)(5), the creditor did not receive the notice and filed its claim after the claims bar date. Both the Bankruptcy Court and the District Court held that the creditor's claim was tardily filed and should be designated as a third-level claim under 11 U.S.C. § 726(a)(3).

In affirming, the Ninth Circuit held that the creditor's claim was untimely. The court held that, under the circumstances, the creditor had sufficient notice and reasonable opportunity to appear as a creditor and to receive notice under Rule 3002(c)(5). The court stated that the creditor should have had itself added to the list of creditors in order to preserve its rights, and by not doing so, it was not acting reasonably in waiting to receive notice.

In this case, the FDIC, like the creditor in *In re Coastal Alaska Lines,* knew that the bankruptcy proceeding was pending and that a Rule 2002(e) notice had been sent out. It also knew or should have known that if assets were found, the Bankruptcy Clerk would notify the listed creditors pursuant to Rule 3002(c)(5) and give them an opportunity to file their claims. The FDIC further knew that it was not listed as a creditor with the Bankruptcy Clerk and therefore would not receive the Rule 3002(c)(5) notice. Under these circumstances, the FDIC's tardily-filed claim is not entitled to second-level status under § 726.

The Bankruptcy Court's holding is in direct conflict with § 726(a)(2)(C)(i), which provides, in essence, that a creditor's claim filed after the claims bar date may be allowed second-level status only if the creditor did not have notice or actual knowledge of the pending bankruptcy case in time to file a timely claim. If the Bankruptcy Court's holding were to prevail, it would mean that an unsecured creditor who is not listed by the debtor, yet knows of the existence of the bankruptcy proceeding, may avoid the claims bar date by simply hanging back and not having itself added to the debtor's mailing matrix. Such a result is contrary to the plain language of the statute, which requires an unsecured creditor with knowledge of the existence of the bankruptcy proceeding to take action to ensure that its claim is timely filed.

### CONCLUSION

For the reasons stated, the decision of the Bankruptcy Court is reversed and the case is remanded to the Bankruptcy Court for consideration of the FDIC's alternative arguments that it had made a timely "informal claim" or that any tardiness should be excused.

IT IS SO ORDERED.

---

**3.** The Court notes that the Bankruptcy Court did not address this case in its decision.