### In re Edward FELDMAN and Rosalie Feldman, Debtors.

### No. 97–80388.

United States Bankruptcy Court, E.D. New York.

April 10, 2001.

Salomon Green & Ostrow, P.C., By Gary I. Selinger, Esq., New York City, for the Chapter 7 Trustee.

Allan B. Mendelsohn, Esq., Zavatsky, Mendelsohn, Gross, Savino & Levy, LLP, Syosset, NY, Chapter 7 Trustee.

McNally & Busche, P.C., By Stephen B. McNally, Esq., Newton, NJ, for Nepco.

## MEMORANDUM DECISION

DOROTHY EISENBERG, Bankruptcy Judge.

Before the Court is a Motion by New England Phoenix Co., Inc. ("Nepco") for an Order to Allow its Claim to be filed as a Late Claim (the "Late Claim Motion") and to participate in the second tier distribution to general unsecured creditors in accordance with 11 U.S.C. § 726(a)(2)(C). For the following findings of fact and conclusions of law, the Court grants Nepco's motion pursuant to Fed.R.Civ.P. 52, as made applicable herein by Fed. R. Bankr.P. 7052.

### BACKGROUND

Nepco's claim arises out of an Affidavit and Judgment by Confession (the "Apple Judgment") entered by the Supreme Court of the State of New York, County of Nassau, on August 21, 1992, in favor of Apple Bank for Savings and against Edward Feldman, one of the Debtors herein (the "Debtor"), in the amount of $940,072.50, inclusive of interest and costs, and assigned prepetition to NAB Asset Venture IV, L.P. ("NAB") and then to Nepco after the filing of the instant Chapter 7 case. Nepco alleges that neither it nor its assignor received notice or had actual knowledge of the Debtor's bankruptcy filing or the Claims Bar Date in time for Nepco or its assignor to timely file a proof of claim in this case. The Trustee opposes the Late Claim Motion on the grounds that (i) Nepco was an unknown creditor to the Debtors and to the Trustee, and (ii) pursuant to Orders of the Court, the Trustee provided notice of the Claims Bar Date to all creditors and parties in interest known to the Debtors and to the Trustee and published notice of the Claims Bar Date in *The New York Times*, and therefore provided Nepco with constructive notice of the Claims Bar Date.

The Court conducted hearings on the Late Claim Motion on January 25, 2001 and February 27, 2001, and directed the parties to supplement the record after the hearings, after which the Court would mark the matter submitted. Based on all of the pleadings had herein and the record made at the hearings, the Court has determined to permit Nepco to file a late proof of claim.

### FACTS

1. On or about August 21, 1992, Apple Bank for Savings ("Apple") obtained a judgment in the sum of $940,972.50 as a result of an action filed in the Supreme

Court of the State of New York, County of Nassau, entitled *Apple Bank for Savings v. Edward Feldman*, Index No. 92–14979. The debt originated as a commercial promissory note secured by a Loan, Pledge and Security Agreement, dated August 23, 1990 between Apple and Edward Feldman.[1] The Apple Judgment was recorded in the Nassau County Clerk's office on August 21, 1992.

2. On its face, the Apple Judgment showed Edward Feldman's home address to be 86 Wheatley Road, Old Westbury, New York ("Wheatley Road"). This address is located in Nassau County—the same county as that in which the Apple Judgment was first obtained and recorded. .

3. On or about March 31, 1995,[2] Apple assigned the Apple Judgment to NAB.

4. On or about April 28, 1995, NAB recorded an Assignment of the Apple Judgment in the Nassau County Clerk's office (3/22/01 McNally Certification, Exh. B).

5. On January 12, 1995, James G. Matera, a Senior Vice President of Apple, wrote to Edward Feldman at his business address, 120 West 45th Street, New York, New York (the "New York City Address"), advising him that Apple's interest in the Apple Judgment had been assigned to NAB and specifically identifying a party at NAB to whom the Debtor should address any future correspondence or inquiries related to the debt.

6. On January 9, 1995, Don M. Cage, a Senior Vice President of NAB, wrote to Edward Feldman at his New York City Address, advising that Apple's interest in the Apple Judgment had been purchased by NAB and advising him where future payments and correspondence should be sent (12/11/00 Keough Certification, Exh. C).

7. Apple corresponded with the Debtor at his New York City business address on several occasions prior to the assignment of the Apple Judgment to NAB, as follows:

a) Letter from the Debtor to Apple, dated February 11, 1991, proposing a restructuring of the loan (2/9/01 Supplemental Keough Certification, Exh. B);

b) Letter from Apple to the Debtor, dated June 11, 1991, proposing terms for a pre-judgment workout; (2/9/01 Supplemental Keough Certification, Exh. C);

c) Letter from Apple to the Debtor, dated May 26, 1992, enclosing the Affidavit of Confession of Judgment, for the Debtor's signature (2/9/01 Supplemental Keough Certification, Exh. D); and

d) Letter from the Debtor to Apple, dated January 21, 1994, concerning workout negotiations (2/9/01 Supplemental Keough Certification, Exh. E).

There is no record of any correspondence between Apple and the Debtor using the

---

1. The security interest granted therein was to certain proceeds of a refinancing of the Tower 45 Associates Limited Partnership's construction loan from the Bank of New York. The status of the this security interest is unknown.

2. Although the Assignment of Judgment was dated as of March 31, 1995, by letter dated January 9, 1995 from Don M. Cage, a Senior Vice President of NAB, to Edward Feldman, Feldman was given notice that NAB had purchased the Apple Judgment as part of a portfolio of loans previously due to Apple. See 12/11/00 Keough Certification, Exh. C. In addition, by letter dated January 12, 1995 from James G. Matera, a Senior Vice President of Apple, to Edward Feldman, Feldman was advised of the sale of his loan to NAB. See 12/11/00 Keough Certification, Exh. D.

Wheatley Road address (2/9/01 Supplemental Keough Certification, ¶ 5).

8. A voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") was filed by Edward and Rosalie Feldman on January 21, 1997 (the "Filing Date") and Allan B. Mendelsohn was appointed as the Trustee.

9. In the schedules and statement of affairs filed on February 25, 1997, the Debtor listed Apple as a creditor for $850,000, but omitted NAB, the then-current holder of the Apple Judgment, even though two separate notices of the NAB assignment were transmitted to the Debtor by NAB and Apple more than two years before the Filing Date.

10. An initial notice of the bankruptcy filing was evidently transmitted by the Clerk of the Court to "Apple Bank for Savings," NAB's assignor, based upon the inclusion of Apple in the Debtor's schedules, statement of financial affairs and creditor matrix. Pursuant to the initial notice generated by the Clerk of the Bankruptcy Court and transmitted to all *listed* creditors, August 19, 1997 was established as a bar date for the filing of claims against the Debtors (the "Original Bar Date").

11. Pursuant to Order of this Court dated November 14, 1997 (the "Sale Order"), the Trustee was authorized to sell the Wheatley Road Property, which constituted the joint debtors' principal residence, to Jeffrey Feldman, their son, who held a second mortgage on the property and was therefore entitled to credit bid under Section 363(k) of the Bankruptcy Code.

12. The Trustee's Application for Approval of the Stipulation Authorizing the Sale of the property to Jeffrey Feldman provides at paragraph 19 as follows:

[T]his entire application, with exhibits, is being served by first class mail on the Office of the United States Trustee; the Debtors' twenty (20) largest unsecured creditors; *all creditors with a secured interest in the Premises; all holders of Judgment Liens;* all parties filing a notice of appearance in this case; the Debtors; current counsel to the Debtors—Pryor Cashman Sherman & Flynn; current counsel to the First Mortgagee—Gail Kester, Esq. at the Dime Savings Bank; current counsel to J[effrey] Feldman, Macco Hackeling & Stern, Attn: Richard L. Stern, Esq. (emphasis supplied).

13. To ascertain the identities of "all creditors with a secured interest in the Premises" and "all holders of Judgment Liens," the Trustee requested Titleserv Title Insurance Services ("Titleserv") to conduct a judgment and lien search (the "Titleserv Lien Search") on the Wheatley Road Property.

14. The Titleserv Lien Search, dated October 1, 1997 (Trustee's Final Submission, Exh. A), listed no fewer than twenty-one (21) judgments and liens against the joint debtors at the Wheatley Road Property. One of the judgments listed was the Apple Judgment.

15. The Titleserv Lien Search did not reveal the April 28, 1995 recorded Assignment of Judgment from Apple to NAB nor was NAB listed as the holder of any other claim against one or both of the joint debtors.[3] Accordingly, the Trustee did not

---

**3.** The record reflects that, on March 22, 2001, Kenneth Warner, Esq. of Titleserv faxed to Nepco's counsel of record with respect to the Late Claim Motion a letter stating that (i) he had reviewed the subject Titleserv Lien

Search including the schedule of docketed judgments; (ii) assignments of judgments are included in Titleserv's judgment search; and (iii) in his opinion, the Titleserv Lien Search ordered by the Trustee did not reflect the

provide NAB with written notice of the intended sale of the Wheatley Road Property.

16. On or about June 29, 1998, more than eighteen (18) months after the Filing Date, and after the Original Bar Date had expired, NAB assigned the Apple Judgment to Nepco (12/11/00 Keough Certification, Exh. F).

17. On or about July 14, 1998, John M. Keough, Esq., general counsel to Nepco, wrote to Edward Feldman to inform him of the assignment of the Apple Judgment to Nepco (12/11/00 Keough Certification, Exh. G). This letter was sent to the Debtor at his New York City Address. Other than this letter, Nepco had no further contact with the Debtor and made no subsequent attempts to collect on the Apple Judgment from the Debtor.

18. Counsel to Edward Feldman, in correspondence dated February 9, 2001, advised Keough that the Debtor maintained his New York City Address from late 1991 through the Spring of 1997, months after the Filing Date (Supplemental Keough Certification, Exh. G).

19. Neither Apple nor NAB or Nepco ever transmitted any notices or correspondence to Edward Feldman at the Wheatley Road address. All correspondence was directed to Edward Feldman at his New York City Address.

20. Edward and Rosalie Feldman were discharged of their debts by Order dated January 28, 1999.

21. On June 22, 1999, this Court entered an order (the "Supplemental Bar Order") fixing a supplemental bar date of August 2, 1999 (the "Claims Bar Date") for, *inter alia*, those persons and entities holding claims against the joint debtors "who did not have notice of the original

bar date, August 19, 1997." Paragraph 4 of the Supplemental Bar Order provides:

Any entity that is required to file a proof of claim on or before the [Claims] Bar Date and fails to file such proof of claim or interest, *shall not, with respect to any such claim or interest, be treated as a creditor of the Debtors' estate for purposes of distribution* and shall be forever barred from asserting such claim against the Debtors (emphasis supplied).

22. Paragraph 6 of the Supplemental Bar Order directed the Trustee to serve a notice of the Claims Bar Date on (i) all entities having filed notices of appearance, (ii) all scheduled creditors, (iii) all known creditors that did not receive notice of the original bar date, (iv) all those having filed proofs of claim, and (v) the United States Trustee. It also directed the Trustee to publish notice of the Claims Bar Date at least once in the national edition of *The New York Times* not later than ten business days following entry of the Supplemental Bar Order.

23. As of the date of the Supplemental Bar Order NAB and Nepco were unknown to the Trustee and, therefore, the Trustee did not serve notice of the Claims Bar Date upon either NAB or Nepco.

24. On July 2, 1999, a "Notice of Last Day to file Proofs of Claim Against Edward and Rosalie Feldman" was published in *The New York Times* (the "Published Notice of Claims Bar Date"). The Published Notice of Claims Bar Date provided in pertinent part:

By order of the Bankruptcy Court, *August 2, 1999 (the "[Claims] Bar Date")* has been fixed as the last date by which all entities ... asserting a claim against

Assignment of Judgment from NAB to Nepco "due to an oversight on the part of the exam-

iner or a misindexing by the clerk" (3/22/01 Certification of Stephen B. McNalley, Exh. C).

the Debtors which arose (a) prior to the Filing Date and who did not have notice of the original bar date, August 19, 1997 (the "Original Bar Date").... *Any such entity that fails to file a proof of claim by August 2, 1999 shall be forever barred from asserting such claim against the Debtors and its [sic] properties, and the Debtors and its [sic] properties shall be forever discharged from any and all indebtedness or liability with respect to such claim.* Such claim holder will not, with respect to any such claim, be treated as a creditor of the Debtors [sic] estate for purposes of distribution, and shall be forever barred from asserting such claim against the Debtors. In no way shall the [Claims] Bar Date serve as an extension of time for those who had notice of the Original Bar Date to file a proof of claim or otherwise seek recovery from the Debtors [sic] estate (emphasis in original).

25. Neither Nepco nor NAB filed a proof of claim in this case before the Claims Bar Date of August 2, 1999.

26. Neither NAB nor Nepco had actual notice or actual knowledge of the pendency of the Debtor's bankruptcy case or of the Original Bar Date or the supplemental Claims Bar Date in time to timely file a proof of claim of this case.

27. Nepco first became aware of the Debtor's bankruptcy case in an on-line public record search conducted by the office of John M. Keough, Esq., general counsel to Nepco, on or about November 20, 2000 (12/11/00 Keough Certification, ¶ 9). Shortly thereafter, Keough contacted the Trustee and his counsel and learned that the Trustee intended to file his final report shortly, but Keough could not ascertain whether Apple or NAB was scheduled to receive a distribution in this case. Consequently, on December 5, 2000,

Keough flew from Boston to Islip to personally review the Debtor's bankruptcy file. It was at this time he discovered that the Debtor had improperly scheduled the NAB claim as a debt owed to Apple. On December 7, 2000, Keough sent the Trustee's counsel a letter, by fax, setting forth the relevant facts surrounding the subject claim.

28. Nepco filed a proof of claim against the estate (the "Nepco Claim") on December 21, 2000, together with the instant Late Claim Motion. The Nepco Claim is stated as a general unsecured claim in the total amount of $1,313,963.80.

29. The Trustee has filed a Final Report, together with a proposed schedule of distribution, and awaits approval of the Final Report by both the United States Trustee and this Court. There has been no final meeting in this case.

### *ISSUES PRESENTED*

1. Whether NAB's January 9, 1995 letter, and Apple's January 12, 1995, to Edward Feldman at his New York City Address and the recording on April 28, 1995 of the Assignment of Judgment constituted notice to the Debtor of NAB's claim such that NAB was a "known" creditor of the Debtor on the Filing Date.

2. Whether the Debtor's failure to list or schedule NAB as a creditor in this case in time to permit the timely filing of a proof of claim by NAB or Nepco precludes the discharge of the debt evidenced by the Apple Judgment.

3. If NAB was a "known" creditor of the Debtor, whether the Trustee is charged with that knowledge, even though the Debtor's schedules, statement of financial affairs and creditor matrix omitted NAB as a creditor.

4. Whether publication notice of the Claims Bar Date precludes Nepco from

asserting its claim and receiving a second level priority distribution from the assets of the estate pursuant to Section 726(a)(2)(C).

5. Whether the equitable doctrine of laches should apply under the facts of this case to bar Nepco's claim against the estate because of its assignor's (NAB's) delay in asserting any claim against the Debtor during the three year period in which it held the Apple Judgment.

### DISCUSSION

 Generally, a tardily filed proof of claim in a chapter 7 proceeding is not permitted to participate in the distribution to general unsecured creditors. 11 U.S.C. § 502(b)(9). By the express words of Fed. R. Bankr.P. 9006(b)(3), the Court may not enlarge that time period. *In re Elmont Electric Co., Inc.,* 206 B.R. 41, 43 (Bankr. E.D.N.Y.1997). Furthermore, the concept of excusable neglect applicable in chapter 11 cases "cannot be imported into the chapter 7 context." *In re Cole,* 189 B.R. 40, 51 (Bankr.S.D.N.Y.1995).

A creditor that files a late claim in a chapter 7 case is not without recourse, however. Section 726(a)(2)(C) of the Bankruptcy Code expressly provides for distribution to holders of tardily filed claims where the creditor had neither notice nor actual knowledge of the case. *In re P & L Credit and Collection Services, Inc.,* 248 B.R. 32, 35 (W.D.N.Y.2000); *In re Mid–Miami Diagnostics, L.L.P.,* 195 B.R. 20, 21–22 (Bankr.S.D.N.Y.1996). Section 726(a) provides, in pertinent part, as follows:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) of this title; or

(C) tardily filed under section 501(a) of this title if-

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection.

11 U.S.C. § 726(a)(1), (2), and (3). In short, Section 726(a)(1) provides that holders of priority claims specified in Section 507 are first in priority; Section 726(a)(2)(A) and (B) provide that allowed unsecured claims which are timely filed under Sections 501(a), (b) or (c) are second in priority; and Section 726(a)(2)(C) provides that allowed unsecured claims which are tardily filed are second in priority after timely filed claims if the creditor did not have notice or actual knowledge of the bar date and a proof of such claim is filed in time to permit payment of such claim. The legislative purpose of Section 726(a)(2)(C) is to permit distribution to creditors that tardily filed claims if their tardiness was due to lack of notice or knowledge of the case. H.R.Rep. No. 95–

595, 95th Cong., 1st Sess. 383 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6339.

Based upon the record before the Court, Nepco fits squarely within the safe-harbor contemplated in Section 726(a)(2)(C) for late filing general unsecured creditors. Neither Nepco nor NAB, Nepco's assignor, had formal notice of the filing of this chapter 7 case or the establishment of the Claims Bar Date. Notice of the filing of the case was evidently sent to Apple, the predecessor of NAB and Nepco, based upon the inclusion of Apple in the joint debtors' schedules, statement of financial affairs and creditor matrix. This oversight cannot be attributed to NAB or Nepco because (i) more than two years prior to the Filing Date, Edward Feldman was notified of the assignment of the Apple Judgment to NAB by both Apple and NAB; and (ii) the Assignment of Judgment was recorded in the Nassau County Clerk's Office on April 28, 1995, almost two years prior to the Filing Date.

The second prong of Section 726(a)(2)(C) is also met in this case. Although the Claims Bar Date has passed, the Final Meeting has not been held and the Trustee has yet to make a final distribution to creditors. Consequently, the Nepco Claim has been filed in time to permit payment of such claim.

### Known Creditors are Entitled to Actual Notice

 A "known" creditor must be given notice of the bankruptcy and the relevant bar date sufficient to satisfy due process. *Fogel v. Zell*, 221 F.3d 955, 963 (7th Cir.2000); *In re U.S.H. Corporation of New York*, 223 B.R. 654 (Bankr.S.D.N.Y. 1998); *In re Brunswick Hospital Center, Inc.*, 1997 WL 836684 (Bankr.E.D.N.Y. 1997); *In re Interstate Cigar Co.*, 150 B.R. 305 (Bankr.E.D.N.Y.1993). In order to determine whether a creditor's claim is

"known" or "unknown," the Court must analyze whether the creditor's claim was reasonably ascertainable by a debtor. *In re Interstate Cigar Co.*, 150 B.R. at 310. In *In re U.S.H. Corporation of New York*, the Court discussed the concept of whether the creditor's claim was "reasonably ascertainable."

A creditor's identity is 'reasonably ascertainable' if that creditor can be identified by reasonably diligent efforts. Reasonable diligence does not require 'impracticable and extended searches ... in the name of due process.' 'A debtor does not have a duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it.'

Case law demonstrates that what is required is not a vast, open ended investigation. The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are not required. Only those claimants that are identifiable through a diligent search are 'reasonably ascertainable' and hence 'known' creditors. 'Reasonable diligence ferreting out known creditors will, of course, vary in different contexts and may depend on the nature of the property interest held by the debtor.' What is reasonable depends on the particular facts of each case. 'A debtor is obligated, however, to undertake more than a cursory review of its records and files to ascertain its known creditors.'

223 B.R. at 659 (citations omitted). Based upon the definitions of "known" and "unknown" creditors set forth by the Court in *U.S.H. Corporation*, it is evident that NAB was a "known" creditor of the Debtor as of the Filing Date. Apple periodically corresponded with the Debtor at the New York City Address from the inception of their business relationship forward. Moreover,

the Debtor carried on his correspondence with Apple from his New York City Address, as evidenced by the February 11, 1991 restructuring proposal and the January 1994 workout bulletin. The record shows that the debt at issue between Apple and the Debtor was a business debt and that, until the Spring of 1997, the Debtor conducted his sophisticated business affairs from his office in New York City. Assuming *arguendo* that the Debtor did not remember receiving the January 1995 letters from NAB or Apple advising him of the assignment of the Apple Judgment, reasonable due diligence by the Debtor in reviewing his own books and records should have revealed the notices of the assignment. Furthermore, the Assignment of Judgment was on file with the Nassau County Clerk and was therefore a matter of public record. The Debtor, who was engaged in the business of real estate development, was sufficiently sophisticated to cause a search of the real property records to ascertain his proper creditors as of the Filing Date. In view of the foregoing, the holder of the Apple Judgment was reasonably ascertainable by the Debtor as of the Filing Date and hence was a "known" creditor. If the Debtor had made proper inquiry into his own books and records, it would have found that the Apple Judgment had been assigned to NAB. Notice to NAB would have been sufficient to disqualify any late filed claims by Nepco. However, NAB was not given any actual notice.

The Trustee argues that the Titleserv Lien Search conducted in connection with the sale of the Debtor's residence to Jeffrey Feldman in 1997 did not reveal the Assignment of Judgment from Apple to NAB and, therefore, NAB and Nepco are "unknown" creditors. However, the record includes a letter from an attorney at the title insurance company indicating that the failure to uncover the Assignment of

Judgment was "due to an oversight on the part of the examiner or a misindexing by the clerk." The Nassau County Clerk has supplied a certified copy of the Assignment of Judgment which indicates that the document was not misindexed. Consequently, the Trustee's title insurance company should have picked up the assignment. The Court holds that, in view of the fact that the assignment is part of the public record, NAB was a "known" creditor at the time of the sale of the Debtor's residence and as of the date of the Supplemental Bar Order. The fact that the Trustee had no actual knowledge of this creditor is not pertinent. It does not change the fact that the Debtor is charged with the knowledge of Apples assignment to NAB.

### Notice by Publication.

■■ When a creditor is "unknown" to a debtor, publication notice of the claims bar date may satisfy the requirements of due process. *Mullane v. Central Hanover Bank,* 339 U.S. 306, 317–18, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *U.S.H. Corporation,* 223 B.R. at 658. However, if a creditor is known to the debtor, notice by publication is not constitutionally reasonable, and actual notice of the relevant bar dates must be afforded to the creditor. *City of New York v. New York N.H. & H.R. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *U.S.H. Corporation,* 223 B.R. at 658. Since NAB was a "known" creditor of the Debtor as of the Filing Date, NAB was entitled to actual notice of the bankruptcy filing and of the Claims Bar Date. Notice by newspaper publication does not give actual notice of a bankruptcy filing to known creditors. *In re Allegheny Int'l, Inc.,* 158 B.R. 356, 359 (Bankr.W.D.Pa. 1993). Published notice of a claims bar date is inadequate for known creditors. *In re Grand Union Co.,* 204 B.R. 864, 872 (Bankr.D.Del.1997). A known creditor must receive actual notice before its claim

is barred forever. *In re Brunswick Hospital Center, Inc.*, 1997 WL 836684 (Bankr. E.D.N.Y.1997); *In re Best Products Co., Inc.*, 140 B.R. 353 (Bankr.S.D.N.Y.1992).

## Claim of a Creditor that is Not Given Notice of Bankruptcy Case and Relevant Bar Dates Cannot be Discharged

■ The Supreme Court has held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank*, 339 U.S. 306, 313–14, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Thus, if a creditor is not given reasonable notice of a bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally discharged. *In re Longardner and Assocs., Inc.*, 855 F.2d 455, 465 (7th Cir.1988); *U.S.H. Corporation*, 223 B.R. at 657. *See also* 11 U.S.C. § 523(a)(3)(B).[4]

Here, since NAB was a "known" creditor of the Debtor entitled under the terms of the Supplemental Bar Order to actual notice of the Claims Bar Date and neither NAB nor its assignee Nepco received notice of the filing of the Debtor's bankruptcy case, the Nepco Claim may not be discharged. *In re Maya Construction*, 78 F.3d 1395, 1399 (9th Cir.), *cert. denied*, 519 U.S. 862, 117 S.Ct. 168, 136 L.Ed.2d 110 (1996) ("Generally, if a known creditor is

not given formal notice, he is not bound by an order discharging the bankruptcy's obligations.")

## The Equitable Doctrine of Laches Does Not Apply to Bar Nepco's Claim

■ The Trustee argues that the equitable doctrine of laches precludes Nepco from asserting a claim and participating in the distribution of assets in this case. In applying laches, a court "may deny relief to a plaintiff who inexcusably and unreasonably delays in seeking relief to the defendant's prejudice." *In re Caldor, Inc.-NY*, 217 B.R. 121, 134 (Bankr.S.D.N.Y. 1998). The length of the delay is not dispositive; "it is the reasonableness of the delay rather than the number of years that elapse which is the focus of inquiry." *Stone v. Williams*, 873 F.2d 620, 624 (2d Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362, *vacated on other grounds*, 891 F.2d 401 (2d Cir.1989).

■ The Trustee cites the case of *In re Drexel Burnham Lambert Group, Inc.*, 151 B.R. 674, 683 (Bankr.S.D.N.Y.1993) ("Drexel I"), *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993) ("Drexel II"), in support of his assertion of laches. However, the consideration of laches and other equitable defenses to the assertion of a late filed claim is inapposite under the facts and circumstances of this case. The facts of *Drexel I* differ from those of the instant case in several critical respects. In *Drexel I*, the dilatorily creditor was the holder of a contingent claim under a guaranty agreement that had failed to take any action for two years

---

**4.** Section 523(a)(3)(A) tracks the language of Section 726(a)(2)(C) and provides as follows:
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
(3) neither listed nor scheduled under section 521(1) of this title, *with the name, if known to the debtor, of the creditor to whom such debt is owed,* in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, *unless such creditor had notice or actual knowledge of the case in time for such timely filing.*
11 U.S.C. § 523(a)(3)(A) (emphasis supplied).

after default. The laches which the bankruptcy court found defeated the underlying claim under applicable New York law. No such equitable defense lies herein to the enforceability of the Apple Judgment, a claim which, under applicable state law, is unassailable and entitled to full faith and credit in a federal bankruptcy court. In addition, in *Drexel I*, the contingent creditor admitted "general" knowledge of the bankruptcy proceedings. That "general" knowledge, while not vitiating the requirement of actual notice, did serve to bolster the laches defense.

In *Drexel II*, the laches argument was addressed in further depth, with the District Court relying upon the cases *In re Hunt*, 146 B.R. 178 (Bankr.N.D.Tex.1992) and *In re Barsky*, 85 B.R. 550 (C.D.Cal. 1988), *aff'd*. 933 F.2d 1013 (9th Cir.1991). In both of these decisions, it is evident that the laches in question arose as a consequence of a "known" but unnoticed creditor failing to file a proof of claim for too long after finally becoming aware of the proceedings. In both *Hunt* and *Barsky*, the creditors sought to assert claims more than two years after first becoming aware of the bankruptcy proceedings.

Here, NAB held a judgment which was valid and enforceable for twenty years from its filing under New York law. The passage of time and the inactivity of the judgment holder would not invalidate or mitigate the judgment. It is common practice for holders of judgments to do little but check periodically to see if the judgment debtor may have come into assets. This is precisely what Mr. Keough was doing when he inquired, unprompted, in December 2000 into Edward Feldman's affairs and discovered the bankruptcy. In contrast to the claimants in *Hunt* and *Barsky*, Nepco acted promptly after discovering the bankruptcy filing in November 2000, communicating with the Trustee and his counsel in early December 2000 and filing the proof of claim and the Late Claim Motion on December 21, 2000, approximately one month after learning of the bankruptcy case.

■ The doctrine of laches further requires a weighing of the prejudice. Delay alone in considering late-filed claims allowance is insufficient to establish prejudice. *In re JWP Information Services, Inc.*, 231 B.R. 209 (Bankr.S.D.N.Y.1999). Nepco, however, will suffer a total forfeiture if denied its claim. On balance, Nepco will suffer the greater harm from the disallowance of its claim.

Finally, the statutory scheme for claims allowance in Chapter 7 cases is expressly set forth in the Bankruptcy Code. By enacting Section 726(a)(2)(C) Congress intended to permit distribution to late filed claims of "known" creditors so long as the claims are filed in time to permit the distribution. This directive supersedes the weighing of the equitable considerations applicable in a chapter 11 case (as in *Drexel* and *Hunt*) or a chapter 13 case (as in *Barsky*), where Section 726 is inapplicable. This proposition is supported by the cases that permit consideration of "excusable neglect" with respect to late filed claims in a chapter 11 case but deny a court that discretion in a chapter 7 case based, in part, on the statutory scheme which specifically reserves the Section 726(a)(2)(C) remedy in chapter 7 liquidation proceedings.

### CONCLUSION

1. This matter is before the Court pursuant to 11 U.S.C. § 726(a)(2)(C). The determination of the allowance of claims against the estate is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

2. The prepetition Apple Judgment is entitled to full faith and credit in this

Court. The Debtor had notice of the Assignment of the Apple Judgment to NAB. In addition, the Debtor had notice of the claim asserted by NAB, Nepco's assignor, prior to the commencement of this Chapter 7 case but failed to list NAB as a creditor in the Schedules, Statement of Affairs or creditor matrix, even though NAB was a "known" creditor. Even if the Trustee had no such knowledge of this creditor, the Trustee is charged with that knowledge.

3. Neither NAB nor Nepco received actual notice of the commencement of this Chapter 7 case in time to timely file a proof of claim. There has been no final distribution to creditors in this case. Consequently, pursuant to 11 U.S.C. § 726(a)(2)(C), Nepco is entitled to a second priority distribution on account of its unsecured claim.

4. Notice by publication is not sufficient notice to known creditors, only to unknown creditors.

5. The equitable doctrine of laches does not apply to the facts and circumstances of this case.

Counsel to Nepco shall settle an Order consistent with this decision within seven (7) days hereof.