### In re VALERINO CONSTRUCTION, INC., Debtors.

#### No. 97–20881.

United States Bankruptcy Court, W.D. New York.

April 9, 2002.

---

Warren H. Heilbronner, Boylan, Brown, Code, Vigdor & Wilson, LLP, Rochester, NY, for Trustee.

Paul S. Groschadl, Woods, Oviatt, Gilman, Sturman & Clarke, LLP, Rochester, NY, for M & T Bank.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### *BACKGROUND*

On April 2, 1997, an Order for Relief under Chapter 7 was entered against Valerino Construction, Inc. (the "Debtor"), after a March 13, 1997 Involuntary Petition had been filed against it and the Debtor consented to the entry of an Order for Relief.

On April 7, 1997, the Debtor filed a Motion (the "Turnover Motion"), which requested that M & T Bank ("M & T"), a secured creditor alleged to have had taken possession, custody and control of substantially all of the Debtor's business records in January 1997, be compelled to turn over the records so that the Debtor could complete its schedules and statements. M & T interposed a Response to the Turnover Motion which asserted that: (1) it was owed approximately $490,000.00 plus interest and expenses that was secured by all of the Debtor's personal property; (2) it had not taken control of the Debtor's books and records which were still at the Debtor's former business premises at 1085 Norton Street, Rochester, New York ("Norton Street"); (3) Norton Street was owned by the Debtor's principal and his spouse, and M & T held a mortgage (the "M & T Mortgage") on the property; and (4) it would voluntarily provide access to Norton

Street so that the Debtor's books and records could be examined and copied. On April 28, 1997, a Stipulated Order (the "Records Order") was entered that provided for access to the Debtor's books and records.

On April 22, 1997, a Notice of a Section 341 Meeting (the "341 Notice") was sent by the Clerk of the Bankruptcy Court (the "Clerk")[1] which indicated that, "at this time there appear to be no assets available from which payment may be made to unsecured creditors. Do not file a proof of claim until you receive notice to do so."

On October 7, 1997, the Clerk received a letter from Warren H. Heilbronner, Esq., the Debtor's Chapter 7 Trustee (the "Trustee"), which stated in part that, "the following case in which I am Trustee has assets and requires a notice to creditors to file claims unless a prior notice has already been sent: 97–20881 Valerino Construction."

Thereafter, an Asset Case Notice (the "1998 Bar Date Notice") was mailed by the Bankruptcy Noticing Center (the "BNC") which indicated that in order to share in any distribution, claims must be filed by January 12, 1998 (the "1998 Bar Date").

On January 13, 1998, the day after the 1998 Bar Date had passed, an unsecured non-priority claim (the "M & T Claim") was filed on behalf of M & T in the amount of $415,344.03. The amount of the Claim represented the balance due on a deficiency judgment entered by the New York State Supreme Court on January 13, 1998 (the "Deficiency Judgment") against the Debtor, the Debtor's principal and an affiliated corporation in connection with the foreclosure of the M & T Mortgage.

On February 17, 1999, the Trustee sent a second letter to the Clerk which stated in part that, "the following cases in which I am Trustee have assets and require a notice to creditors to file claims unless a prior notice has already been sent: 97–20881 Valerino Construction."

Thereafter, an Asset Case Notice (the "1999 Bar Date Notice") was mailed by the BNC which indicated that claims must be filed by May 26, 1999 (the "1999 Bar Date").

On March 2, 1999, M & T filed an additional unsecured non-priority claim (the "Second Claim") in the amount of $415,344.02, which was otherwise identical to the M & T claim except that it included a signed copy of the Deficiency Judgment.

On February 13, 2002, the Trustee filed an Objection (the "Claim Objection") to the M & T Claim and the Second Claim as being filed late. The Objection asserted that the Trustee believed that the 1999 Bar Date Notice was a nullity, since the 1998 Bar Date was a valid Bar Date and it could not be extended by the 1999 Bar Date Notice which may have been issued in error.

On March 6, 2002, M & T interposed a Response to the Claim Objection which asserted that: (1) the M & T Claim was filed more than one year prior to the 1999 Bar Date; (2) the 1999 Bar Date was established at the request of the Trustee; (3) an official notice issued by the Court cannot be treated as a "nullity," as suggested by the Trustee; and (4) M & T did not have a claim in this case until January 13, 1999, a date after the 1998 Bar Date had passed, because: (a) it was not until January 13, 1998 that the Deficiency Judgment was entered; and (b) in accordance with this Court's Decision & Order in *In re Tyler*, 166 B.R. 21 (Bankr.W.D.N.Y.1994)

---

1. At this time the Clerk's notices were actually being mailed by the Bankruptcy Noticing Center.

("*Tyler*"), as a matter of law, M & T did not have a claim that it could file with the Court until it had obtained a deficiency judgment.[2]

## DISCUSSION

### I. Bar Date

Unlike in a Chapter 11 case where the Court, pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3),[3] is required to fix the time within which a proof of claim or interest must be filed, and for cause shown may extend the time, in a Chapter 7 case the time within which a proof of claim or interest must be filed is established by Rule 3002(c), and notices setting forth the applicable time periods are required by Rule 2002(f) to be given by the Clerk as a part of the Clerk's administrative responsibilities.

When the Order for Relief was entered, it was determined by the Clerk that the Debtor's Chapter 7 case was a no asset case which made Rule 2002(e) applicable. Rule 2002(e) provides that:

(e) Notice of no dividend

In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

In accordance with Rule 2002(e), the Clerk directed the BNC to mail the 341 Notice which included the applicable no asset language.

Thereafter, when the Clerk received the Trustee's October 7, 1997 letter which indicated that the Debtor's case had become an asset case and a notice to file claims should be given to creditors, the Clerk directed the BNC to mail the 1998 Bar Date Notice in accordance with Rule 3002(c)(5), which provides that:

(c)(5) If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

Once the bar date has been set pursuant to Rule 3002(c) and it has passed, other than for the exceptions set forth in Sections 3002(c)(1) through (4), which are not applicable in this case, neither the Clerk nor the Bankruptcy Court has the power or authority to extend that bar date. A bar date in a Chapter 7 case cannot even be extended upon a showing of excusable neglect because Rule 9006 directly prohibits it. *See In re Cole*, 189 B.R. 40 (Bankr. S.D.N.Y.1995); *In re Feldman*, 261 B.R. 568 (Bankr.E.D.N.Y.2001). In addition to the exceptions set forth in Sections 3002(c)(1) through (4), in limited circumstances, but again not applicable in this case, Section 726(a)(2)(C) permits a claim filed after the Bar Date in a Chapter 7 case by a creditor with no notice or actual knowledge of the case prior to the expiration of the Bar Date, to share fully in a distribution.[4] Although not asserted by M

---

**2.** Nothing in the case file indicates that between the date of the entry of the Records Order, on April 28, 1997, and January 13, 1998, when the Deficiency Judgment was entered, M & T obtained relief from the automatic stay in the Debtor's case permitting it

to continue to pursue its mortgage foreclosure or deficiency judgment proceedings.

**3.** All references to the Rules are to the Federal Rules of Bankruptcy Procedure.

**4.** Section 726(a)(2)(C) provides:

& T in this case, one further possibility exists for a late filed claim to share fully in a distribution as if it were timely filed. If there was an "informal proof of claim," timely asserted, it can be amended after the bar date.[5]

██ In this case, the Clerk's Office made an inadvertent error when it failed to carefully read the Trustee's February 17, 1999 letter which requested that a Rule 3002(c)(5) notice be mailed to creditors only if one had not previously been sent. When this letter was received, the 1998 Bar Date Notice had already been mailed by the BNC at the direction of the Clerk, so the Clerk's Office should have ignored the Trustee's February 17, 1999 request and not prepared or directed the mailing of the 1999 Bar Date Notice.

On the facts and circumstances presented, the Clerk had no power or authority to extend the 1998 Bar Date, and the 1999 Bar Date Notice and 1999 Bar Date were invalid and a nullity.

Furthermore, if the Court were to overrule the Claim Objection and allow the M & T Claim or the Second Claim as a timely filed claim, there would be substantial prejudice to the Debtor's other creditors that timely filed their claims when there has been no prejudice to M & T. The M & T Claim was filed on January 13, 1998, prior to the 1999 Bar Date Notice being mailed, so M & T cannot, and it did not on the return date of the Claim Objection, assert that it relied on the 1999 Bar Date Notice.

## II. *The Right of M & T to File A Claim Prior to January 13, 1998*

██ M & T has asserted that the Court's Decision & Order in *Tyler* prevented it from filing a proof of claim in the Debtor's case until such time as it had obtained the Deficiency Judgment.

Section 101(5)(A) defines a "claim" as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

Although the Court does not know why the Debtor was named as a defendant in the M & T mortgage foreclosure proceeding, it is likely that it was because the Debtor was a guarantor of the indebtedness secured by the M & T Mortgage that was in default on the date that the Order for Relief was entered.

Since at all times between the entry of the Order for Relief and the 1998 Bar Date there was an amount due on the indebtedness secured by the M & T Mortgage, M & T had a claim, as defined in Section 101(5)(A), against the Debtor for that unpaid indebtedness. Therefore, M & T had the right, pursuant to Section 501, to file a proof of claim and nothing in the

---

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—
(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—
(C) tardily filed under section 501(a) of this title, if
(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim[.]
11 U.S.C. § 726(a)(2)(C) (2002).

5. *See In re Lipman,* 65 F.2d 366 (2d Cir.1933); *In re Gibraltor Amusements, Ltd.,* 315 F.2d 210 (2d Cir.1963); *In re Drexel Burnham Lambert Group, Inc.,* 129 B.R. 22, 26–27 (Bankr.S.D.N.Y.1991); *In re W.T. Grant Co.,* 53 B.R. 417, 421 (Bankr.S.D.N.Y.1985); *In re Float, Inc.,* 163 B.R. 18 (Bankr.N.D.N.Y. 1993).

Court's Decision & Order in *Tyler* would have precluded M & T from filing such a claim.

The essence of *Tyler* is that once a mortgage holder on New York real property has obtained relief from the automatic stay, unless otherwise provided for in the lift stay order, whether and in what amount the mortgage holder after foreclosure and sale has a deficiency that can share in any distribution in the bankruptcy case must be determined by either: (1) an agreement with the trustee; or (2) the New York State mortgage deficiency judgment procedure set forth in New York Real Property Actions and Proceedings Law ("RPAPL") Sections 1371(2) and 1371(3).[6] In these circumstances, this Bankruptcy Court will not determine whether there is a deficiency or the amount of any deficiency for the purpose of sharing in any distribution in an asset Chapter 7 case. The New York State Courts regularly and routinely make these determinations in accordance with RPAPL Section 1371(2) and applicable case law.

In this regard, *Tyler* states in part that:

Although a party which has had a deficiency judgment fixed by the state court pursuant to the New York Real Property Actions and Proceedings Law after the stay provided by Section 362 has been modified cannot enforce that judgment against a debtor other than by filing a proof of claim before any applicable bar date or amending a previously filed proof of claim filed before any applicable bar date, the Court does expect that the right to any deficiency judgment and the amount of the same will be fixed as part of the applicable state court mortgage foreclosure proceedings after a motion pursuant to RPAPL § 1371 has been made or the parties have otherwise agreed to a deficiency in that proceeding or the pending bankruptcy case.

*In re Tyler*, 166 B.R. 21, 25 (Bankr. W.D.N.Y.1994).

It is clear from the above language in *Tyler* that it is this Court's expectation that a mortgage holder on New York real property that has obtained relief from the stay and anticipates seeking a deficiency judgment will: (1) file a protective proof of

---

6. New York Real Property Actions and Proceedings Law Sections 1371(2) and 1371(3) provide:

2. Simultaneously with the making of a motion for an order confirming the sale, provided such motion is made within ninety days after the date of the consummation of the sale by the delivery of the proper deed of conveyance to the purchaser, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or in such other manner as the court may direct. Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment. Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus the amount owing on all prior liens and encumbrances with interest, plus costs and disbursements of the action including the referee's fee and disbursements, less the market value as determined by the court or the sale price of the property whichever shall be the higher.

3. If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.

NY RPAPL §§ 1371(2) and (3) (2002).

claim before the expiration of any applicable bar date if it has not obtained the deficiency judgment in State Court before the expiration of the bar date; and (2) the protective proof of claim will be properly amended when a deficiency judgment is obtained, not further pursued or denied.

In this regard, a trustee administering a Chapter 7 asset case where such a protective claim has been filed will not be able to make a final distribution and complete the administration of the estate until a deficiency judgment has been obtained, waived or denied.

### CONCLUSION

The Trustee's Claim Objection to the M & T Claim and the Second Claim is sustained. The M & T Claim is allowed as a tardily filed claim and the Second Claim is disallowed.

**IT IS SO ORDERED.**