554

In an action to recover damages for breach of an insurance contract, the defendant appeals from an order of the Supreme Court, Nassau County (Feinman, J.), dated January 24, 2007, which denied its motion for leave to amend its answer to assert a fourth affirmative defense and for summary judgment dismissing the complaint based on the proposed fourth affirmative defense, and granted the plaintiff's cross motion for summary judgment on the issue of liability.

Ordered that the order is affirmed, with costs.

The plaintiff's failure to properly move for the entry of a deficiency judgment within 90 days after the delivery of the referee's deed would normally have resulted in a presumption that there had been a "full satisfaction of the mortgage debt" that was owed to it (RPAPL 1371 [3]). As a result of such presumed full satisfaction of the mortgage debt, the plaintiff mortgagee would normally be deemed to lack any insurable interest in the property insured by the defendant (see *Moke Realty Corp. v Whitestone Sav. & Loan Assn.*, 82 Misc 2d 396, 397-398 [1975], *affd* 51 AD2d 1005 [1976], *affd* 41 NY2d 954 [1977]). In the absence of any such insurable interest, the plaintiff would not be permitted to recover under the mortgagee loss payable clause contained in the defendant's policy (see *Moke Realty Corp. v Whitestone Sav. & Loan Assn.*, 82 Misc 2d at 397-398; *Sportsmen's Park v New York Prop. Ins. Underwriting Assn.*, 97 AD2d 893 [1983], *affd* 63 NY2d 998 [1984]).

The present case does not fall within the ambit of the general rule stated above since the plaintiff was legally enjoined from making a motion for leave to enter a deficiency judgment in accordance with RPAPL 1371. A decree of the federal Bankruptcy Court, dated November 14, 2000, pursuant to which all of the mortgagor's dischargeable debts had been discharged, expressly enjoined the plaintiff from "instituting or continuing any action, employing any process or engaging in any act to collect [any one of the discharged] debts as personal liabilities of the [mortgagor]."

By order dated October 16, 2000, the Bankruptcy Court had modified an automatic stay "to the extent necessary to allow [the plaintiff's predecessor in interest] to foreclose on the Mortgage and the real property located at 455 East 185th Street, Bronx, New York." While this order may have permitted the plaintiff's predecessor in interest to obtain from the Supreme Court leave to enter a deficiency judgment against the mortgagor, even while the bankruptcy proceedings were pending (see *Steuben Trust Co. v Buono,* 254 AD2d 803 [1998]; *In re Tyler,* 166 BR 21, 25 [1994]; *In re Valerino,* 275 BR 684, 689 [2002]), the plaintiff's predecessor in interest would have been able to enforce such a deficiency judgment only ' "by filing a proof of claim [in the Bankruptcy Court] before any applicable bar date or [by] amending a previously filed proof of claim before any applicable bar date" ' (*In re Valerino,* 275 BR 684, 689 [2002], quoting *In re Tyler,* 166 BR 21, 25 [1994]; *see In re Ferrante,* 195 BR 990 [1996]). However, the plaintiff's predecessor in interest had, at an earlier point in the bankruptcy proceedings, been instructed not to file any proof of claim because it appeared to the Bankruptcy Court that there were, in any event, no assets "available to the trustee to pay creditors." The filing of a proof of claim in a "no assets" bankruptcy case would have been " 'meaningless and worthless' " (*In re Deutsch-Sokol v Northside Sav. Bank,* 290 BR 27, 31 [SD NY 2003], quoting *In re Mendiola,* 99 BR 864 [ND Ill 1989]; *see In re Beezley,* 994 F2d 1433, 1435 [9th Cir 1993]; *In re Moyette,* 231 BR 494, 499 [ED NY 1999]). It also would have been "meaningless and worthless" in 2005 to seek what would have been a necessarily void deficiency judgment relating to mortgage debt that already had been extinguished in 2000.

Here, the foreclosure sale did not occur until more than five years after the date of the final judgment of the Bankruptcy Court. The plaintiff could not have sought a deficiency judgment in accordance with the procedure prescribed in RPAPL 1371 without contravening the final decree of the Bankruptcy

Court dated November 14, 2000. As the plaintiff notes, such an application not only would have violated the decree of the Bankruptcy Court, but also, it would have resulted in a judgment that would have been void as it would have been based on an indebtedness from which the mortgagor had already been discharged. Such an application would have violated the general rule that "the discharged [mortgagor] cannot be the subject of a deficiency judgment motion" (1 Bergman, New York Mortgage Foreclosures § 2.19, at 2-96.20 [2007]; *see Terio v Great W. Bank,* 166 BR 213, 217 [SD NY 1994] ["a chapter 7 discharge eliminates the debtor['s] in personam liability . . . while the in rem liability of the property held as security is unaffected and may be enforced by the mortgagee postdischarge"] [internal quotation marks omitted]).

Under these circumstances, we agree with the Supreme Court that the plaintiff's failure to make a timely motion for leave to enter a deficiency judgment should not relieve the defendant of the contractual obligation that it otherwise would have to pay, the fire loss claim pursuant to the mortgagee loss payable clause of the policy. Because the plaintiff was enjoined from making a motion for a deficiency judgment in accordance with RPAPL 1371, it would be inequitable to conclude that the amount of the successful bid at the foreclosure action (although low when compared to the amount that would have been owed to the plaintiff by the mortgagor had the debt not been discharged) must nonetheless be "deemed to be in full satisfaction of the mortgage debt" (RPAPL 1371 [3]). In other words, because the plaintiff was enjoined from making a motion in accordance with RPAPL 1371, the analysis should be the same as though RPAPL 1371 (3) did not exist. As noted by the Court of Appeals in *Whitestone Sav. & Loan Assn. v Allstate Ins. Co.* (28 NY2d 332, 336 [1971] [internal quotation marks omitted]), the common-law rule, and the rule that would prevail but for the terms of RPAPL 1371 (3), was that "extinguishment of a mortgage . . . does not necessarily extinguish the debt itself. Only to the extent that the mortgagee receives payment upon the debt through the foreclosure is the debt extinguished . . . . It is in this sense that the rule is quite properly stated to the effect that extinguishment of the mortgage does not affect the liability of an insurance company to a loss-payable mortgagee."

For the reasons outlined above, the Supreme Court properly denied both the defendant's motion for leave to amend its answer to assert an affirmative defense based on the plaintiff's supposed lack of an insurable interest in the property and the defendant's motion for summary judgment dismissing the

complaint based on such proposed affirmative defense. If such an affirmative defense had been pleaded as of right, the plaintiff would have had the right to strike it, for the reasons outlined above.

We also agree with the Supreme Court that the plaintiff was entitled to summary judgment on the issue of liability. The policy under review in this case expressly states that the mortgagee, in this case the plaintiff, will be protected even "in the event of an increase in hazard [or in the case of a] failure by any insured persons to take all reasonable steps to save and preserve the property after a loss . . . if [the mortgagee] has no knowledge of these conditions." Here, there is evidence that the plaintiff knew that the mortgaged property had been abandoned, and thus, that there may have been an "increase in hazard." However, construing the terms of the policy to resolve any possible ambiguities against the defendant (*see United States Fid. & Guar. Co. v Annunziata,* 67 NY2d 229, 232 [1986]), we conclude that the plaintiff's apparent knowledge of the "increase in hazard" that may have resulted from the mortgagor's abandonment of the property should not result in a forfeiture of coverage where the plaintiff undoubtedly did comply with another provision of the mortgagee loss payable clause according to which it had a duty "to notify [the defendant] in writing of any change of . . . occupancy or increase of hazard of which [it had] knowledge."

In a letter dated October 24, 2002, the plaintiff notified the defendant that the subject property had been abandoned by the mortgagor. This was approximately two months before the date of the fire loss, which occurred on December 28, 2002, for which the plaintiff now seeks to recover insurance proceeds. There is no indication that the defendant thereafter cancelled the policy due to the supposed "increase in hazard."

To the extent that the defendant relies on various exclusions that are applicable to limit the availability of coverage to the insured mortgagor, for example, the "increase in hazard" exclusion set forth in paragraph 8 on page 8 of its policy, the defendant fails to appreciate that the mortgagee loss payable clause of its policy created what amounted to a separate contract with the plaintiff (*see United States Fid. & Guar. Co. v Annunziata,* 67 NY2d 229, 234 [1986]; *Grady v Utica Mut. Ins. Co.,* 69 AD2d 668, 673 [1979]). Exclusions that limit or exclude coverage based on an act or omission of "an insured person" do not apply to the plaintiff. The plaintiff is not "an insured person" as that term is defined in the policy (*see United States Fid. & Guar. Co. v Annunziata,* 67 NY2d at 232-233 n 2). We therefore conclude

that the Supreme Court was correct in determining that, after the plaintiff made a prima facie showing of entitlement to summary judgment as to liability, the defendant failed to demonstrate the existence of any triable issue of fact either as to the invalidity of its July 10, 2003 disclaimer as to the plaintiff, or as to the lack of merit of the three affirmative defenses asserted in the defendant's answer. Mastro, J.P., Fisher, Carni and McCarthy, JJ., concur.